437 So.2d 823 (1983)
Bobbie J. HART, et al.
v.
ALLSTATE INSURANCE COMPANY, et al.
No. 83-C-0524.
Supreme Court of Louisiana.
September 2, 1983.
Rehearing Denied October 7, 1983.
*825 Joseph H. Simpson, Charles M. Reid, Amite, for applicant.
E. Kelleher Simon, Murphy & Simon, Covington, Henry A. Mentz, Jr., Hammond, for respondents.
MARCUS, Justice.
Bobbie J. Hart, individually and as natural tutrix of her minor child, Carolyn Hart, instituted this action against Willie Route and her own insurer, Allstate Insurance Company, to recover damages for bodily injuries sustained by her and her daughter resulting from a two-car accident. Plaintiff also sought penalties and attorney fees from Allstate.
It was alleged that on May 29, 1980, plaintiff and her daughter were passengers in a vehicle owned by plaintiff and driven by Karen D. Hart which collided with a vehicle owned and operated by Willie B. Route. It was further alleged that Route's negligence was the sole cause of the accident and that Route was uninsured at the time. In addition, it was alleged that Allstate had issued to plaintiff an automobile liability policy which included medical payments and uninsured motorist coverage, and that, despite notice, Allstate had arbitrarily refused to respond to plaintiff's demand for payment under these provisions. Allstate and Route filed answers denying liability, Route's uninsured status and asserting that the sole cause of the accident was the negligence of Karen Hart or, alternatively, that she was contributorily negligent. Prior to trial, Allstate paid $838 in medical bills which plaintiff's attorney had submitted to the company.
After trial, the jury returned a special verdict finding that Route was negligent and that plaintiff was entitled to $1,000 and her daughter, $2,500, for injuries sustained by them as a result of the accident. The jury further found that plaintiff was entitled to penalties and attorney fees for Allstate's failure to timely pay medical expenses and to settle the claim under the uninsured motorist provision of the policy. The trial judge rendered judgment in conformity with the jury's answers to the special questions and according to applicable law. Attorney fees were fixed at $4,500. The court of appeal affirmed the award of general damages but reversed the granting of penalties and attorney fees.[1] On plaintiff's application, we granted certiorari to review the correctness of that decision.[2]
The issues presented for our determination are: (1) whether plaintiff is entitled to penalties and attorney fees for failure of Allstate to timely pay medical expenses; (2) whether the statute imposing penalties and attorney fees applies to an uninsured motorist claim and, if so, is plaintiff entitled to recover same under the facts of this case; and (3) whether the jury abused its discretion in the award of general damages.

FACTS
Our review of the record reveals the following facts. On May 29, 1980, plaintiff *826 and her daughter, Carolyn, were passengers in an automobile owned by plaintiff and driven by her sister, Karen D. Hart. The Hart vehicle was proceeding in an easterly direction on East Cherry Street in Amite, Louisiana, when a vehicle, owned and operated by Willie Route proceeding in the opposite direction, began to weave from one lane of traffic to another. Ms. Hart also began to switch lanes to avoid the Route vehicle but was unsuccessful and a collision occurred in the middle of the road. Mr. Route was arrested and a photoelectric intoximeter test revealed .258% by weight of alcohol in his blood. He was charged with reckless driving and simple drunk.
Carolyn suffered a blow to her mouth which required stitches immediately after the accident. Several days later, she went to a dentist. A root canal was performed and a cap was placed on this tooth. Plaintiff received a bruise on her leg and a back sprain. She was employed at a hospital and the following day she saw her doctor in the hall and complained of a sore leg and back. X-rays were performed which proved to be negative. Further x-rays taken about two and a half months, thirteen months and eighteen months after the accident also proved to be negative. She returned to her doctor in April 1981 (some eleven months after the accident) and complained of tightness in her back but denied having any real pain. Two other doctors who examined plaintiff found no objective findings. Plaintiff did not miss any work.
Allstate had issued an automobile policy to plaintiff covering the vehicle involved in the accident. The policy was in full force and effect at the time. The policy included coverage for medical payments in the amount of $1,000 for each person and uninsured motorist coverage in the amount of $5,000 for each person, $10,000 for each accident.
On June 3, 1980, Allstate was notified of the accident by plaintiff's insurance agent. The Allstate's adjuster's diary indicates that on June 4, plaintiff was contacted with regard to the accident. The adjuster was told that Mr. Route had crossed over into the Hart's lane and that Karen had moved into the other lane to avoid the accident and the collision had occurred in the "middle of both lanes." The diary also indicates that plaintiff had a sore leg and that Carolyn had injured her tooth and mouth. On the same day, medical pay forms were mailed to plaintiff. On June 5, Allstate contacted Willie Route. He informed Allstate that, although he had been ticketed for reckless driving, the Hart vehicle had crossed over into his lane, he had stopped, and was then hit by the Hart vehicle. He was also asked as to the name of his insurer. He stated that he did not know offhand but would check his papers and let them know. On the same day, Allstate also contacted the investigating officer. He informed them that Mr. Route had admitted fault at the scene but nothing was said about the ticket, the test results or that Route had been charged with simple drunk. On July 1, Allstate sent another letter asking plaintiff to forward her medical bills and to complete the medical pay "package" so that payment could be made. Allstate did not receive any medical bills from plaintiff until August 25, 1980. On that date, Allstate received a letter from plaintiff's counsel demanding payment, together with medical bills. On September 2, Allstate wrote plaintiff's counsel enclosing medical forms and informing him that the forms had to be completed by plaintiff and her physicians before payment could be made. By letter dated September 4, 1980, plaintiff's counsel returned a signed medical authorization form to Allstate along with an additional medical bill. On October 3, plaintiff's attorney wrote Allstate enclosing the medical reports on plaintiff and her daughter. In addition, he informed Allstate for the first time that Mr. Route was uninsured and made demand for the policy limits of $10,000 ($5,000 for each person) under the uninsured motorist provision of plaintiff's policy. He also enclosed an additional medical bill of $20 and made further demand for payment of the medical expenses ($838). On October 23, 1980, the instant suit was filed. On November 18, 1980, plaintiff's medical expenses were paid in full.

*827 PENALTIES AND ATTORNEY FEES FOR FAILURE TO TIMELY PAY MEDICAL EXPENSES
Plaintiff's claim for penalties and attorney fees is predicated on La.R.S. 22:658, which provides in pertinent part:
All insurers issuing any type of contract other than those specified in R.S. 22:656 [life insurance] and 22:657 [health and accident insurance] shall pay the amount of any claim due any insured ... within sixty days after receipt of satisfactory proofs of loss from the insured, .... Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, ... together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount....
In the instant case, we find that Allstate failed to pay plaintiff's medical expenses under the medical payments provision of the policy within sixty days after receipt of satisfactory proof of loss and demand therefor. Allstate was in possession of several of plaintiff's bills on August 25, 1980, was informed that these bills were in connection with the accident, and demand was made for payment. On August 29 and September 4, 1980, plaintiff submitted additional bills and furnished Allstate with a medical authorization form. At this time, if Allstate doubted that the medical bills did not arise from the accident, it was encumbent upon Allstate, not plaintiff, to investigate the claim within the sixty-day statutory period beginning September 4, 1980.[3] The bills were not paid nor was an investigation of the claim, of which there had never been any real dispute, conducted by Allstate within the time allowed by law. Accordingly, we find that Allstate's failure to pay this claim within the prescribed period was arbitrary, capricious and without probable cause. Hence, the court of appeal erred in reversing that part of the judgment of the trial court awarding penalties and attorney fees for the failure of Allstate to timely pay plaintiff's medical expenses.[4]

PENALTIES AND ATTORNEY FEES FOR FAILURE TO PAY THE UNINSURED MOTORIST CLAIM
La.R.S. 22:658 provides that all insurers issuing "any type" of "contract" other than life insurance and health and accident insurance shall pay the amount of any claim due any insured. Uninsured motorist coverage is a contract whereby the insurer agrees to pay all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle because of "bodily injury" sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured or underinsured motor vehicle. Accordingly, La.R.S. 22:658 is applicable to an uninsured motorist claim. However, this statute is penal in nature and, consequently, must be strictly construed. Headrick v. Pennsylvania Millers Mutual Insurance Company, 257 La. 1101, 245 So.2d 324 (1971). Also, one who claims penalties and attorney fees has the burden of proving *828 that the insurer has received "satisfactory proof of loss" as a necessary predicate to a showing that the insurer was arbitrary, capricious or without probable cause. Steadman v. Pearl Assurance Company, 242 La. 84, 134 So.2d 884 (1961).
A "satisfactory proof of loss" within the meaning of La.R.S. 22:658 is that which is sufficient to fully apprise the insurer of the insured's claim. La.R.S. 22:1406(D)(1)(a) (uninsured motorist statute), which provisions govern the issuance of uninsured motorist coverage in this state, provides in pertinent part:
No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; ... (Emphasis added.)
In our view, the intent and effect of this provision is plain. A person insured under the uninsured motorist provision of a particular policy must establish that he is "legally entitled to recover" damages from the owner or operator of an uninsured or underinsured motor vehicle in order to obtain coverage thereunder. Breaux v. Government Emp. Ins. Co., 369 So.2d 1335 (La.1979). The words "legally entitled to recover" mean simply that the plaintiff must be able to establish fault on the part of the uninsured motorist which gives rise to damages and prove the extent of those damages. Booth v. Fireman's Fund Insurance Company, 253 La. 521, 218 So.2d 580 (1969). Accordingly, to establish a "satisfactory proof of loss" of an uninsured motorist claim, the insured must establish that the insurer receive sufficient facts which fully apprise the insurer that the owner or operator of the other vehicle involved in the accident was uninsured or underinsured, that he was at fault, that such fault gave rise to damages and establish the extent of those damages.
In the instant case, we do not find that plaintiff carried her burden of proving that the insurer received a "satisfactory proof of loss" of her uninsured motorist claim. First, there was a genuine dispute as to who was at fault in the accident. Allstate's adjuster was informed by the insured that Karen Hart had switched lanes several times and that the accident occurred in the "middle of both lanes." On the other hand, Willie Route related a substantially different version of the accident. The fact that Mr. Route admitted fault does not change these facts nor would such an admission be binding on Allstate. In addition, plaintiff and her daughter testified that they knew that Mr. Route had been drinking and plaintiff was in possession of information which indicated that Mr. Route was legally intoxicated at the time of the accident. Yet, this information was not relayed to Allstate so that it could properly evaluate her claim.
Secondly, it was not until October 3, 1980, that plaintiff informed Allstate that Mr. Route was uninsured. Mr. Route had previously informed Allstate that he did not know offhand whether he had any insurance but would check his papers and call Allstate back. La.R.S. 22:1406(D)(6)(a-c)[5] *829 provides a method whereby the insured may establish that the owner and operator of the vehicle involved did not have automobile liability insurance in effect on the date of the accident. Plaintiff made no effort to furnish this information to Allstate.
Finally, plaintiff demanded the full policy limits of $5,000 for both herself and her daughter. The jury's verdict of $1,000 for plaintiff and $2,500 for her daughter established that she was clearly not "legally entitled" to the amounts she demanded.
In sum, we conclude that plaintiff failed to prove that Allstate received a "satisfactory proof of loss" which fully apprised the insurer that she was "legally entitled to recover" from the uninsured motorist. Hence, the court of appeal did not err in reversing that part of the judgment of the trial court awarding penalties and attorney fees for failing to settle plaintiff's uninsured motorist claim.
Having found that plaintiff is entitled to penalties and attorney fees for the failure of Allstate to timely pay the medical expenses, we must determine what a reasonable attorney fee would be for the prosecution and collection of this claim. Our review of the record reveals that a fee of $500 would be appropriate.

PLAINTIFF'S GENERAL DAMAGES
Before an appellate court can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its discretion in making its award. La.Civ.Code art. 1934(3); Carollo v. Wilson, 353 So.2d 249 (La.1977); Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976); Anderson v. Welding Testing Laboratory, 304 So.2d 351 (La.1974). Our review of the record reveals that both plaintiff and her daughter received minor injuries. Accordingly, we do not find that the jury abused its "much discretion" in finding that plaintiff was entitled to $1,000.00 and Carolyn $2,500.00 for their injuries.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed only insofar as it denied penalties and attorney fees for the failure of Allstate to timely pay the medical expenses; otherwise, it is affirmed. Judgment is rendered in favor of Bobbie J. Hart individually and as natural tutrix of her minor child, Carolyn Hart, and against Allstate Insurance Company for $98.16, which is 12% of $818, as penalties and $500 as attorney fees. All costs of this appeal are taxed one-half to plaintiff and one-half to Allstate.
WATSON, J., concurs, but would award a larger attorney fee.
LEMMON, J., concurs.
NOTES
[1] 426 So.2d 711 (La.App. 1st Cir.1982).
[2] 431 So.2d 2 (La.1983).
[3] Allstate argues in brief to this court that the adjuster's diary indicates that the medical authorization form was not received by Allstate until September 18, 1980. However, no testimony was presented at trial which would support this contention. In any event, payment was not received by plaintiff until November 18, 1980, sixty-one days after receipt of the medical authorization form.
[4] As previously indicated, a medical bill for $20.00 was not submitted to Allstate until October 3, 1980. Since the medical bills were paid on November 18, 1980, this bill was timely paid. Hence, a penalty of 12% will be imposed on only $818 of the $838 of medical bills.
[5] La.R.S. 22:1406 provides in pertinent part:

(6) In any action to enforce a claim under the uninsured motorist provisions of an automobile liability policy, the following evidence shall be admissible as prima facie proof that the owner and the operator of the vehicle involved did not have automobile liability insurance in effect on the date of the accident in question:
(a) The introduction of sworn notarized affidavits from the owner and the operator of the alleged uninsured vehicle attesting to their current addresses and declaring that they did not have automobile liability insurance in effect covering the vehicle in question on the date of the accident in question. When the owner and the operator of the vehicle in question are the same person, this fact shall be attested to in a single affidavit.
(b) A sworn notarized affidavit by an official of the Department of Public Safety to the effect that inquiry has been made pursuant to R.S. 32:871 by depositing the inquiry with the United States mail, postage prepaid, to the address of the owner and operator as shown on the accident report, and that neither the owner nor the operator has responded within thirty days of the inquiry, or that the owner or operator, or both, have responded negatively as to the required security. This affidavit shall be served by certified mail upon all parties fifteen days prior to introduction into evidence.
(c) Any admissible evidence showing that the owner and operator of the alleged uninsured vehicle was a nonresident or not a citizen of Louisiana on the date of the accident in question, together with a sworn notarized affidavit by an official of the Department of Public Safety to the effect that on the date of the accident in question, neither the owner nor the operator had in effect a policy of automobile liability insurance.