SHORTESS, Judge.
This appeal is from a judgment of the trial court which found Utica Mutual Insurance (Utica) liable for its $100,000.00 limit of uninsured/underinsured motorist coverage, and also arbitrary and capricious in failing to pay the uninsured motorist claim. The trial court judgment assessed a 12% penalty and $40,000.00 in attorney fees under La.R.S. 22:658.[1]
On March 30, 1981, Stanley D. McDill (McDill) and Joseph A. Latino (Latino) were involved in an automobile accident at the intersection of Louisiana Highway 431 and Louisiana Highway 935 in Ascension Parish. McDill was operating a trailer-truck owned by his employer, J.W. Cade, and insured by Utica with $100,000.00 uninsured/underinsured motorist coverage. The automobile driven by Latino was covered by a liability insurance policy issued by Southern Farm Bureau Casualty Insurance Company with a $10,000.00 policy limit. The accident occurred at about 2:45 a.m. and was caused by Latino running a stop sign governing his direction of travel. Following the accident McDill was taken by ambulance to the East Ascension General Hospital Emergency Room where a laceration of his scalp was stitched and x-rays were taken.
Approximately 12 hours after the accident McDill was seen by Dr. Joseph L. Mass. Upon examination Dr. Mass found, in addition to the laceration on his scalp, a large abrasion over his right upper back, a large bruise on his right thigh, and marked congenital scoliosis of the spine. He prescribed antibiotics and a soft cervical collar. Dr. Mass saw McDill again on April 2 and 9, 1981, noting only tenderness of his right lower ribs and problems with the scalp laceration. At McDill’s April 13, 1981, visit Dr. Mass noted that he had no complaints and was not wearing his collar. On April *21 20, 1981, Dr. Mass referred McDill to Dr. John Fraser, an orthopedist, to evaluate his scoliosis and also to discuss clearing him to return to work. After examining McDill on May 2, 1981, Dr. Fraser, reported that McDill had neck and back complaints and had probably suffered a neck strain secondary to the accident, but he was ready to return to work.
Dr. Mass next saw McDill on June 13, 1981, at which time McDill complained of a continuous severe headache across the front of his head and pain between his shoulder blades. Dr. Mass continued him on his same medication and ran an EEG.
On November 23, 1981, Dr. Mass saw McDill for the last time. McDill complained of having severe back pain for the past five days. Dr. Mass took some x-rays of the lower back, which were normal, and put McDill through some maneuvers which indicated the possibility of a herniated disc. He then referred McDill to Dr. Andrew Kucharchuk, an orthopedic surgeon.
On December 2, 1981, Dr. Kurharchuk saw McDill for the first time as a referral from Dr. Mass. McDill at that time complained of excruciating low back pain. After a physical examination, Dr. Kucharchuk concluded McDill had a disc problem. Dr. Kucharchuk had McDill admitted to Our Lady of the Lake Hospital on December 14, 1981, for a myelogram and definitive treatment. Dr. Kucharchuk referred McDill to a neurosurgeon, Dr. George Lohmann, who did the myelogram and removed a ruptured disc on December 16, 1981.
McDill initially instituted suit against Latino and Southern Farm Bureau in the Twenty-third Judicial District Court. This suit was subsequently settled for Southern Farm Bureau’s $10,000.00 policy limit on June 11, 1982. McDill reserved all rights against Utica.
On March 12, 1982, McDill filed suit against Utica for the $100,000.00 underin-sured motorist coverage. . McDill also sought penalties and attorney fees alleging Utica was arbitrary and capricious in failing to pay the policy limits.
Utica answered alleging that McDill was contributorily negligent and that it could not be held liable for penalties and attorney fees under La.R.S. 22:658 because it never received “satisfactory proofs of loss.” Uti-ca requested a jury trial on all issues except the question of penalties under La. R.S. 22:658. The parties later stipulated that this issue would be decided by the trial judge.
After trial on the merits, the jury found McDill free of contributory negligence and awarded $250,000.00 in damages.
The trial judge found Utica’s refusal to pay to be arbitrary and capricious and assessed a penalty of 12% on the total amount of the loss and $40,000.00 in attorney fees. It is from this judgment by the trial judge that Utica appeals, arguing that its refusal to pay cannot be found arbitrary and capricious under La.R.S. 22:658 because it never received satisfactory proof of loss as required by that statute.
La.R.S. 22:658 applies to an “uninsured” or “underinsured” motorist claim. Hart v. Allstate Insurance Company, 437 So.2d 823 (La.1983). A claimant for penalties and attorney fees under La.R.S. 22:658 has the burden of proving that the insurer failed to pay the claim within 60 days after receiving “satisfactory proofs of loss” of the claim, and that the insurer was arbitrary, capricious or without probable cause in failing to pay. A “satisfactory proof of loss” within the meaning of La.R.S. 22:658 is that which is sufficient to fully apprise the insurer of the insured’s claim. Hart, 437 So.2d at 828. To establish satisfactory proof of loss under an uninsured motorist claim, the insured must establish that the insurer received sufficient facts to fully apprise the insurer that the owner or operator of the other vehicle involved in the accident was uninsured or underinsured, that he was at fault, that such fault gave rise to damages and the extent of those damages. Hart, 437 So.2d at 828. The parties stipulated that the first notice Utica was given of the claim was the filing of suit on March 12,1982, alleging that McDill had medical expenses of $25,000.00, lost *22 wages of $300,000.00, and personal injury damages of $600,000.00. Our question here becomes, then, whether during the course of the proceedings Utica received from McDill sufficient information to constitute “satisfactory proofs of loss” under the uninsured motorist policy. If Utica did, but did not make payment within 60 days, and is found to have been arbitrary and capricious, then an award of penalties and reasonable attorney fees is proper.
On March 26, 1982, counsel for Utica wrote a letter to counsel for McDill and requested, inter alia, copies of all medical bills and medical reports, lost wage verification, and a copy of the police report.
On April 6, 1982, counsel for McDill sent a letter to counsel for Utica. It claimed to contain “all of the medical which I have in the file to date,” and stated that co-counsel “has further verified that McDill did undergo disc surgery.” This letter also purported to transfer a copy of the police report. However, there is no evidence in the record to show what, if anything, was attached. We note that even if the claims made in this letter had been proven at trial, same would not necessarily satisfy McDill’s burden; the statute demands “satisfactory proof,” not “everything in the file.” Likewise, an insurer cannot be required to rely upon its insured’s unsupported assertion that co-counsel has “verified” the insured’s surgery.
On August 4, 1982, Utica took the discovery deposition of McDill. McDill testified that he was presently employed as a truck driver and had been so employed since March 4, 1982, when released by Dr. Lohmann; he worked five days a week and was making between $800 and $1100 every two weeks; at the time of the accident on March 30, 1981, he had been making $1400 to $1500 every two weeks working for his previous employer. McDill did not work between March and June of 1981, but in June of 1981 he began driving trucks for Raymond McMorris. In November of 1981, his back was bothering him so he saw Dr. Mass who referred him to Dr. Kuchar-chuk; however, Dr. Lohmann performed the operation on his back. He continued to work for McMorris until he had his back operation in December, 1981.
The only link between the back operation and the accident established in this deposition was McDill’s statement that he told his employer Cade that he thought the back problem was caused by the accident. We do not believe this suffices as “satisfactory proof of loss.” There is no showing that anything in the deposition tended to establish the extent of McDill’s damages, an objective legal cause for the surgery, or the cost of the surgery. Utica’s deposition of McDill in preparation for trial did not constitute receipt by Utica of “satisfactory proof of loss” from McDill.
On September 21, 1982, counsel for Utica sent a letter to counsel for McDill confirming a conversation in which counsel for McDill agreed to furnish counsel for Utica the following documentation:
1. work records of McDill for Cade;
2. work records for other employers;
3. complete medical records, reports and bills of Dr. Lohmann;
4. records of East Ascension hospital;
5. medical records and bills of Dr. Fraser;
6. medical records and bills of Dr. Mass;
7. medical records and bills of Dr. Ku-charchuk;
8. records and bills of Dr. Lappin; and
9. medical records of the Dixon Memorial Hospital.
By letter dated October 29, 1982, counsel for McDill stated that he was transmitting “complete copies of everything that I have for these items”:
1. report dated June 2, 1982, from Dr. Lohmann;
2. report dated May 14, 1982, from Dr. Lohmann;
3. work release with “no heavy lifting” restriction dated March 2, 1982, from Dr. Lohmann;
4. discharge sheet from East Ascension General Hospital;
*23 5. letter dated April 20, 1981, from Dr. Mass;
6. records of East Ascension Hospital for March 30, 1981 (no statement of charges was included);
7. copies of receipts from Dr. Mass totaling $149.00;
8. copy of Dr. Fraser’s bill for $150.00;
9. copy of Dixon Hospital receipt for $20.00; and
10.copy of bill of Dr. Lappin for $30.00.
Neither the medical records of Dr. Fraser, the medical records and bills of Dr. Ku-charchuk, nor any work-related records were sent with this letter.
Upon examination, it appears that the items submitted under cover of this letter were not “satisfactory proofs of loss.” The report of Dr. Mass, the first physician McDill saw after the accident, noted only “marked scoliosis of his spine which was undoubtedly congenital.” Also, the x-rays taken then showed no trauma but only the lower cervical/upper thoracic scoliosis. Dr. Lohmann’s only connection of the disc problem he diagnosed with the accident was his recollection of the history given him by the plaintiff himself. (No similar history was mentioned by Dr. Mass.)
Furthermore, despite the claim made in the letter, the other information was not “complete.” The attached documents contain only a copy of the letter (report) written by Dr. Lohmann indicating that he did perform disc surgery on plaintiff and a reproduction of a “no heavy lifting” work restriction issued by Dr. Lohmann regarding plaintiff. No bill of any type from Dr. Lohmann is included. The photocopies of the bills from Dr. Mass are of insufficient quality to allow one to calculate the total. Similarly, although a bill from Dr. Fraser is included, his name (on the bottom of the bill) was not reproduced on the photocopy sent the insurer. It can only be determined to be a copy of Dr. Fraser’s bill by comparing it with the original, and there is no showing that the original was ever sent to the insurer.
On November 1, 1982, counsel for Utica wrote to counsel for McDill advising that he had not yet received the documents requested in his letter of September 21, 1982. Under cover of a letter dated November 2, 1982, McDill sent “work records concerning any other employers or entities” and a “barely legible” copy of McDill’s 1981 Federal income tax return. Attached to this letter and entered at trial is the photocopy of the timesheets for McDill dated from March, 1982, through October, 1982, a log of McDill’s services for Raymond McMor-ris, and the tax return photocopy. There is no explanation of the significance of these items or in what way they can aid Utica in evaluating McDill’s claim.
By letter dated December 16, 1982, counsel for McDill purportedly transmitted to counsel for Utica itemized statements of earnings, but the record does not make clear what documents were included. When questioned at trial about this letter, McDill’s counsel stated, “I don’t know what I sent under cover of that frankly. It must be whatever else may not have gotten there before.”
If “satisfactory proofs of loss” is to have any meaning at all in an uninsured/underinsured context, it must be that quality of proof which enables the insurer to realize that it is probably liable for some part of the policy’s coverage, and that quality of proof which enables it to reasonably determine the dollar amount of benefits to be paid. With reference to uninsured/underinsured motorist coverage, the Supreme Court in Hart was quite specific:
In our view, the intent and effect of [La.R.S. 22:1406(D)(1)(a), the uninsured motorist statute] is plain. A person insured under the uninsured motorist provision of a particular policy must establish that he is “legally entitled to recover” damages from the owner or operator of an uninsured or underinsured motor vehicle in order to obtain coverage thereunder. Breaux v. Government Emp. Ins. Co., 369 So.2d 1335 (La.1979). The words “legally entitled to recover” mean *24 simply that the plaintiff must be able to establish fault on the' part of the uninsured motorist which gives rise to damages and prove the extent of those damages. Booth v. Fireman’s Fund Insurance Company, 253 La. 521, 218 So.2d 580 (1969).
(Emphasis added.) Hart, 437 So.2d at 828.
The record in this case indicates just over $8,000.00 in medical bills and expenses, an amount below the $10,000.00 already received from the Latino/Southern Farm Bureau primary settlement. Moreover, the evidence reflects that no more than a small portion of the proofs of this claim was transmitted to counsel for Utica prior to trial. Finally, we note that the medical report of Dr. Mass and the records of East Ascension Hospital fail to show the existence of any low back trauma or complaints in the hours following the accident, and Dr. Lohmann in his report does not specifically attribute the disc surgery to the accident. “La.R.S. 22:658 ... is penal in nature and ... must be strictly construed_ [0]ne who claims penalties and attorney fees has the burden of proving that the insurer has received ‘satisfactory proof of loss’ as a necessary predicate to showing that the insurer was arbitrary, capricious, or without probable cause.”[2] Hart, 437 So.2d at 828 (citation omitted).
After careful review of the record, and considering the totality of the circumstances present, we find that McDill did not satisfy the statutory and jurisprudential requirements of submitting “satisfactory proofs” to Utica of his legal entitlement to damages and the extent of those damages. Accordingly, the judgment of the trial court awarding McDill penalties and attorney fees is reversed at his costs.
REVERSED AND RENDERED.
CRAIN, J., dissents and assigns reasons.

. La.R.S. 22:658 provides:
"Sec. 658. Payment of claims, policies other than life and health and accident; penalties
All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney’s fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney’s fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney’s fees.”

. Because of our holding that no satisfactory proofs of loss were ever received by Utica in this case, it is unnecessary to consider the second requirement of La.R.S. 22:658, a finding of an arbitrary and capricious or without probable cause failure to pay.