CRAIN, Judge,
dissents.
The majority holds that Utica’s refusal to pay cannot be found arbitrary and capricious under La.R.S. 22:658[1] because it never received satisfactory proof of loss as required by that statute. The parties stipulated at trial that the first notice of McDill’s claim for uninsured motorist benefits was the filing of this suit on March 12, 1982.
Hart v. Allstate Insurance Company, 437 So.2d 823 (La.1983) holds a “satisfactory proof of loss” within the meaning of La.R.S. 22:658 is that which is sufficient to fully apprise the insurer of the insured’s claim. Hart, 437 So.2d at 828. To establish a “satisfactory proof of loss” of an uninsured motorist claim, the insured must establish that the insurer received sufficient facts to fully apprise the insurer that the owner or operator of the other vehicle involved in the accident was uninsured or underinsured, that he was at fault, that such fault gave rise to damages and the extent of those damages. Hart, 437 So.2d *25 at 828. However, proof of loss under La.R.S. 22:658 is not proof of the claim as in the lawsuit itself. A proof of loss is not required to be in any particular form, and may even be verbal. Its purpose is simply to advise the insurer of the facts of the claim. Riverland Oil Mill, Inc. v. Underwriters For Lloyd’s, New York, 368 So.2d 156 (La.App. 2d Cir.1979), writ denied, 369 So.2d 1365 (1979). To apprise and to prove are not the same.
It is conceded that the first notice Utica had of the claim was when it was sued, and the suit claimed penalties and attorney fees which at that time could not have been due. However, in Benoit v. American Mutual Insurance Company of Boston, 236 So.2d 674 (La.App. 3rd Cir.1970), writ denied, 256 La. 874, 239 So.2d 366 (1970), the court recognized a continuing fiduciary duty owed by an insurer to its insured. Thus, while the insurer was initially justified in not paying or tendering to its insured fire insurance proceeds based on the insurer’s then legitimate belief that the cause of the fire was arson and that the arson might very well be attributable to the insured, once the insurer learned that it could no longer justifiably rely on that defense, the insurer then and there had the obligation to pay or tender insurance benefits which it otherwise undisputedly owed. Not doing so rendered the insurer liable to its insured for statutory penalties and attorneys’ fees.
The question here becomes whether, during the course of the proceedings, Utica received sufficient information to satisfy the requirements for “proof of loss” under an uninsured motorist policy as established by Hart. If that point is reached and payment is not made within 60 days, and that failure to pay is found to be arbitrary and capricious, then penalties including reasonable attorney fees are proper.
A. CONTRIBUTORY NEGLIGENCE
Utica alleges in its answer that McDill’s contributory negligence was a cause of the accident. However, the record is absent any evidence produced by Utica to substantiate this allegation. In fact, the testimony of Amette Heintze at trial reveals there were no facts at all indicating that McDill was eontributorily negligent. This was never a serious defense. Its lack of merit could have been easily determined within 60 days from the filing of suit. McDill’s deposition taken August 4, 1982, put the issue at rest.
B. CAUSATION
Utica claims satisfactory proof of loss was never established because there was reasonable grounds to doubt that the accident caused the disc injury.
McDill filed its claim with Utica on March 12, 1982, the same day that he filed suit. This was Utica’s first notice of McDill’s underinsured motorist claim. In a letter dated March 26, 1982, counsel for Utica requested from counsel for McDill all medical bills, medical reports and lost wage verification. Counsel for McDill responded to this request under cover of a letter dated April 6, 1982. In this letter counsel notes that he is enclosing all of the medical information in his file to date and further verified that McDill did undergo disc surgery performed by Dr. George Lohmann. However, no documentation of this fact was enclosed.
On August 4, 1982, Utica deposed McDill. McDill pointed out at that time that he had never had any comparable low back problems before the accident on March 30, 1981.
In a letter dated September 21, 1982, Utica requested McDill to furnish certain exhibits listed on McDill’s pretrial order as potential exhibits at trial. Counsel for McDill responded to this request in a letter dated October 29, 1982. Under cover of this letter counsel states he is enclosing “complete copies of everything that I have for these items,” except for McDill’s work records. The most important information accompanying this letter was the medical reports of Dr. Lohmann and Dr. Mass. Dr. Mass’ report reveals that he examined McDill five times from immediately following the accident in March through April, 1981. Dr. Mass noted a marked scoliosis *26 (curvature) of the spine which was undoubtedly congenital. The report is absent any history from McDill of lower back problems since the accident. The two reports from Dr. Lohmann show that he examined McDill for the first time on December 16, 1981. The history given by McDill indicates that most of the injuries from the accident had resolved except for some low back pain.
On November 1, 1982, Utica sent counsel for McDill a letter requesting “reasonable settlement thoughts” noting that the medical reports received presented a serious question as to whether the disc surgery was a result of the accident on March 30, 1981. Counsel for McDill responded under cover of a letter dated November 2, 1981. Enclosed with this letter were work records concerning any other employers or entities with reference to McDill and McDill’s 1981 income tax return.
The last correspondence between both parties was a letter dated December 16, 1982. In this letter counsel for McDill states he is enclosing a copy of McDill’s “Itemized Statement of Earnings.” However, the record reveals that there was no documentation accompanying this letter. Trial on the merits began January 26,1983.
A careful review of the above correspondence convinces me that Utica was arbitrary and capricious in not paying the claim. Keeping in mind that “Proof of Loss” is not synonomous with legal proof of the claim, the information provided to Utica was sufficient to constitute a proof of loss no later than August 4, 1982, when McDill was deposed. Utica knew then that McDill had disc surgery which he claimed resulted from the accident. At that point it was up to Utica to determine whether there were reasonable defenses to the claim. They actually never had more than one seemingly legitimate defense. Specifically, Dr. Mass, McDill’s treating physician, reported that McDill’s first complaint of lower back pain was on November 23, 1981, approximately eight months following the accident and that McDill had not complained of lower back pain during any of the seven examinations between the accident and the last visit.
The fact of the matter is that Utica relied on causation as a defense simply based on the length of time that elapsed between the accident and surgery. They elicited testimony from Dr. Mass at trial that causation should be referred to specialists. Yet Uti-ca did not present any specialists at trial to testify that the accident did not cause the injury. In fact, the specialists who testified at trial connected the injury to the accident. Nor did Utica have any evidence that would have indicated an intervening occurrence that would have caused the disc injury. Causation was not a serious defense.
C. QUANTUM
Utica next alleges that it received no satisfactory proof of loss because the insured never established the extent of damage. Specifically, Utica argues quantum was always at issue because of McDill’s possible contributory negligence, the fact that causation between the accident and surgery was at issue and the value of the claim including lost wages was still in dispute.
An examination of the claim, including the fact that plaintiff incurred in excess of $8,000 in medical expenses, would have satisfied Utica that the claim was worth in excess of $10,000, thus rendering them liable for some amount. The fact that the jury returned a verdict of $250,000 is indication that the slightest examination of the claim would reveal damages to an extent greater than $10,000. Thus, I have no difficulty in concluding that the extent of damage necessary to constitute sufficient proof of loss was submitted long prior to the trial of this matter. Additionally, in Sibley v. Insured Lloyds, 442 So.2d 627 (La.App. 1st Cir.1983), this court held that where there is a reasonable dispute as to the amount of loss, the insurer can avoid the imposition of penalties including attorney fees by unconditionally tendering the part of the claim it considers undisputed. However, if the insurer conditions its offer *27 to pay an undisputed amount on the insured’s acceptance thereof in full settlement, the offer is not viewed as an unconditional tender for purposes of La.R.S. 22:658. O’Brian v. Allstate Insurance Company, 420 So.2d 1222 (La.App. 3rd Cir.1982).
Sufficient proof was submitted to Utica that it owed something over the $10,000 primary coverage. However, the record reflects that there was never an unconditional tender by Utica of any portion of McDill’s claim. Accordingly, my opinion is the trial court was not manifestly erroneous in concluding that Utica was arbitrary and capricious in its refusal to pay the undisputed portion of McDill’s claim. La.R.S. 22:658; Henson v. Handee Corporation, 421 So.2d 1134 (La.App. 2d Cir.1982).
My difference with the majority is in what it takes for a “proof of loss” to be satisfactory. My view is that this defendant was fully apprised of the claim by the petition for damages filed by McDill coupled with his deposition. Utica then knew the claim, the basis for the claim and even the doctors involved. At this point Utica had a proof of loss. It then became necessary for Utica to make a further examination of the claim to determine whether there would be legitimate basis for defending it in order to avoid being arbitrary and capricious in failing to pay at least what Utica would consider to be undisputed. Utica never discovered, nor so far as the record shows, even attempted to discover a legitimate defense to the claim. Utica simply decided to “stone-wall” the case due to the length of time between the accident and the - surgery. In effect, Utica told McDill “if you think you have a claim, prove it.” [2] Allowing this allows the uninsured motorist carrier to require its insured to carry the claim to court and prove it with no exposure for penalties. This may be a legitimate tactic in a liability case, but it is not in an uninsured motorist case. To apprise is not to prove, yet the majority refers to “that quality of proof.”
I respectfully dissent.

. La.R.S. 22:658
Sec. 658. Payment of claims, policies other than life and health and accident; penalties
All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such paymerlt within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney’s fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney’s fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees.

. Utica did not call a single witness at trial.