630 So.2d 949 (1993)
Sharon DANEY and Gregory Daney
v.
Carolyn HAYNES, et al.
No. 93-CA-1103.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1993.
*950 Marie Riccio Wisner, New Orleans, for plaintiff/appellee.
William Ryan Acomb, Porteous, Hainkel, Johnson & Sarpy, New Orleans, for defendant/appellant.
Before PLOTKIN, WALTZER and LANDRIEU, JJ.
PLOTKIN, Judge.
Defendant State Farm Mutual Automobile Insurance Co. appeals a trial court finding that its failure to timely pay uninsured/underinsured *951 (UM) insurance to plaintiffs Sharon and Gregory Daney was arbitrary, capricious, and without probable cause, entitling the Daneys to penalties and attorney's fees under the provisions of LSA-R.S. 22:658. We amend the judgment to award additional attorney's fees for work performed on appeal and to add legal interest to the judgment from the date of judicial demand, and affirm.

Facts
Ms. Daney injured her back in an automobile accident which occurred at the uncontrolled intersection of Elysian Fields Avenue and Canton Street in the City of New Orleans on August 3, 1989. The accident occurred when the vehicle which Ms. Daney was driving struck a vehicle driven by defendant Carolyn Haynes. The police report on the accident indicates that Ms. Haynes ran a stop sign. Defendant State Farm insured Ms. Haynes under an automobile liability policy with the limits of $25,000 per person and $50,000 per accident. Additionally, State Farm insured Ms. Daney under a UM policy with limits of $25,000 per person and $50,000 per accident.
The State Farm UM claims investigation was handled by Claims Specialist Gabriella Doaks. Ms. Doaks acknowledged at trial that she first received a demand letter from the attorney representing the Daneys on August 24, 1989. Then, on August 31, 1989, she received the police report, which showed that Ms. Haynes had been cited for a traffic violation in connection with the accident; Ms. Doaks stated that she concluded from that report that Ms. Haynes was at fault in causing the accident. On September 18, 1989, Ms. Doaks received a facsimile transmission (FAX) from Ms. Daney's employer, Michael Mayhall, which indicated that Ms. Daney had missed 41 hours of work because of her injuries sustained in the car accident, for a net loss of wages totalling $318.11.
On September 27, 1989, Ms. Doaks sent a letter to Ms. Daney's treating physician, Dr. Gerald Davis, requesting Ms. Daney's medical records. On October 5, 1989, Ms. Doaks paid a medical bill dated October 2, 1989, which indicated that Ms. Daney had been diagnosed with a "lumbar HNP"; Ms. Doaks admitted at trial that she knew that "HNP" meant "herniated nucleus pulpous," a condition commonly known as a "ruptured disc."
On October 19, 1989, Ms. Doaks received the medical records she had requested, which detailed Ms. Daney's condition from the date of the accident until September 15, 1989. The records indicated that Ms. Daney had first consulted Dr. Davis on August 5, 1989 for pain in her back which developed during the three days immediately following the accident. Dr. Davis' history also indicated that Ms. Daney had not previously had any problems with low back or neck pain. Additionally, the medical records indicated that Ms. Daney had submitted to an MRI examination on September 13, 1989. Further, the records included a handwritten notation dated September 15, 1989, by someone named "Susan," indicating that she had contacted Ms. Daney and told her that she had a ruptured disc.
Ms. Doaks stated at trial that she submitted the Daney claim for approval of payment of UM policy limits on October 20, 1989, but the request was rejected by her supervisors who had "problems with causation" because there was not enough medical documentation in the file. Ms. Doaks said she had nothing directly relating the injury to the accident at that time, despite the doctor's recitation of Ms. Daney's history.
On October 23, 1989, Ms. Doaks scheduled an independent medical examination with Dr. James T. Williams, who examined Ms. Daney on October 31, 1989. Ms. Doaks received Dr. Williams' report on November 7, 1989; that report indicated that Ms. Daney had "objective evidence of mechanical dysfunction in her lower back"; Dr. Williams also said that he would like to see the MRI. Thereafter, Ms. Daney asked Dr. Davis to forward the MRI to Dr. Williams. Ms. Doaks admitted that she did not submit the Daneys' claim for approval to make an unconditional tender of the UM policy limits at that time.
Ms. Doaks conceded that she subsequently received four additional demand letters for payment under the UM policyone dated November 2, 1989; one dated November 16, 1989; one dated December 2, 1989, and one dated January 16, 1990. The plaintiffs filed the instant suit on December 27, 1989. However, *952 Ms. Doaks took no action on the file between the time she made her request to Dr. Davis to send the MRI to Dr. Williams in early November 1989 until sometime in late January 1990, when she received some updated medical reports, which indicated that Ms. Daney was preparing to undergo surgery. At that time, she submitted the Daneys' claim for authorization to pay the UM policy limits.
Ms. Doaks admitted at trial that she never made any requests for updated medical reports on Ms. Daney's condition after her initial request, despite the fact that the reports she received only indicated Ms. Daney's condition up until September 15, 1989. Additionally, Ms. Doaks admitted that she never attempted to get the MRI to forward to Dr. Williams herself. Ms. Doaks conceded that she had complete authority to request those things.
Ms. Doaks stated that her supervisor authorized payment of the $25,000 UM policy limits on January 25, 1990. Thereafter, Ms. Doaks unsuccessfully attempted to negotiate a "structured settlement" of the claim. Finally, on March 2, 1990, State Farm issued a check to the Daneys in the amount of $25,000, the limits under the UM policy.
Arbitrary, capricious, or without probable cause
When this accident occurred in 1989, LSA-R.S. 22:658 provided, in pertinent part, as follows:
A. All insurers issuing any type of contract other than those specified in R.S. 22:656 [life insurance] and 22:657 [health and accident insurance] shall pay the amount of any claim due any insured ... within sixty days after receipt of satisfactory proofs of loss from the insured....
B. (1) Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the total amount of the loss, payable to the insured ... together with all reasonable attorney fees for the prosecution and collection of such loss....
After hearing the evidence outlined above, the trial judge found that State Farm was liable for penalties and attorney fees for failure to tender payment within 60 days of November 1989, at which time he found that "there was a reasonable basis ... to conclude... that there was a ruptured disc suffered by Sharon Daney." State Farm challenges that finding, claiming that the trial court applied the wrong standard to determine the amount of damages, and that the trial court did not permit State Farm a reasonable time to determine whether it had sufficient facts to establish the extent of damages.
Initially, we note that a trial court's determination that an insured is entitled to penalties and attorney fees under the above article because of the insurer's failure to timely pay a claim within 60 days of receipt of "satisfactory proof of loss" was arbitrary, capricious, or without probable cause is a finding of fact, which cannot be disturbed in the absence of manifest error. Marcel v. Allstate Insurance Co., 536 So.2d 632, 637 (La.App. 1st Cir.1988), writ denied 539 So.2d 631 (La.1989). Additionally, the determination of whether the refusal to timely pay the claim was arbitrary, capricious or without probable cause depends on the facts available to the insurer at the time of the action or inaction. Haynes v. Shumake, 582 So.2d 959, 961 (La.App. 2d Cir.1991)
Specifically, State Farm claims that it had not received satisfactory proof of loss in November 1989. A plaintiff with a claim under LSA-R.S. 22:658 has the burden of proving, among other things, that the insurer received satisfactory proof of loss. Haynes, 582 So.2d at 961; Rushing v. Dairyland Insurance Co., 449 So.2d 511, 514 (La.App. 1st Cir.), aff'd 456 So.2d 599 (La.1984). In fact, proof that the insurer received satisfactory proof of loss is considered a "necessary predicate" to showing that the insurer acted arbitrarily, capriciously, or without probable cause in failing to pay the benefits. Savoy v. Chapman, 441 So.2d 21, 23 (La.App. 3d Cir. 1983).
In order to establish satisfactory proof of loss, the insured must prove that the *953 insurer received "sufficient facts which fully apprise" the insurer of the following things:
1. that "the owner or operator of the other vehicle involved in the accident was uninsured or underinsured";
2. "that he was at fault";
3. "that such fault gave rise to damages; and
4. "the extent of those damages."
McDill v. Utica, 475 So.2d 1085, 1089 (La. 1985), citing Hart v. Allstate Insurance Co., 437 So.2d 823, 827 (La.1983).
State Farm claims that the Daneys failed to carry their burden of proof in this case because they failed to show that State Farm had "sufficient facts which fully apprise[d]" it of the extent of damages suffered by Ms. Daney. In making this argument, State Farm cites McDill as follows:
If the first three elements of the Hart test are satisfied and the insured has made a showing that the insurer will be liable for some general damages, the insurer must tender the reasonable amount which is due. This amount would be unconditionally tendered to the plaintiff not in settlement of the case, but to show their good faith in the matter and to comply with the duties imposed upon them under their contract of insurance with the insured. The amount that is due would be a figure over which reasonable minds could not differ.

Id., 475 So.2d at 1091-92. (Emphasis added.)
Thus, State Farm claims that the trial judge applied the wrong standard when he stated in his reasons for judgment that State Farm had a "reasonable basis" in November 1989 to know that it should have tendered the $25,000 UM policy limits. State Farm claims that the trial court could find it arbitrary, capricious, or without probable cause in failing to timely pay the claim only if the plaintiffs showed that reasonable minds could not differ on the issue of whether Ms. Daney sustained damages in excess of the $25,000 liability policy limits.
However, State Farm's argument on this issue ignores several important principles of law. For example, in determining that the insurer was arbitrary, capricious, or without probable cause in failing to pay benefits, the court in Hart, 437 So.2d 823, stated as follows:
In the instant case, we find that Allstate failed to pay plaintiff's medical expenses under the medical payments provision of the policy within sixty days after receipt of satisfactory proof of loss and demand therefor. Allstate was in possession of several of plaintiff's bills on August 25, 1980, was informed that these bills were in connection with the accident, and demand was made for payment. On August 29 and September 4, 1980, plaintiff submitted additional bills and furnished Allstate with a medical authorization form. At this time, if Allstate doubted that the medical bills did not arise from the accident, it was incumbent upon Allstate, not plaintiff, to investigate the claim within the sixtyday statutory period beginning September 4, 1980. The bills were not paid nor was an investigation of the claim, of which there had never been any real dispute, conducted by Allstate within the time allowed by law. Accordingly, we find that Allstate's failure to pay this claim within the prescribed period was arbitrary, capricious, and without probable cause.
Id. at 827. (Emphasis added.)
The instant case is very similar to the Hart case. By November 1989, State Farm was in possession of bills from the plaintiff, as well as medical reports indicating that Ms. Daney suffered from a herniated disc. State Farm had been informed that the bills and the injuries documented in the reports were caused by the accident. Additionally, Dr. Davis' report stated that Ms. Daney had not had any problems with her back previous to the accident. Finally, a demand had been made for payment. Since State Farm had the necessary medical authorizations to investigate the claim further if it still had questions about whether the injury was caused by the accident, it was incumbent on State Farm to conduct the necessary investigation within the statutory 60-day period following the receipt of the satisfactory proof of loss as detailed above. Instead, Ms. Doak took no action on the file for almost two months. Therefore, the trial court's conclusion *954 that the State Farm's failure to pay the claim within 60 days of November 1989 was arbitrary, capricious, or without probable cause is not manifestly erroneous.
Additionally, we find no merit in State Farm's contention that the Daneys failed to prove the extent of the damages because they failed to prove that State Farm had "sufficient facts to fully apprise" it of the value of Ms. Daney's claim over the amount of the $25,000 liability policy, using the necessary "amount over which reasonable minds could not differ" standard, which is the standard established by McDill, 475 So.2d 1085. However, even in the McDill case, the appellate court found that the insurer was arbitrary and capricious in failing to pay "some reasonable amount of the general damages" once it learned that the primary insurance coverage was "all but deleted" by the plaintiff's medical bills. Id. at 1092.
Although the record is unclear concerning the amount of medical expenses the plaintiffs had incurred by November 1989 and whether those expenses had "all but deleted" the primary liability insurance coverage, the trial court found that State Farm was arbitrary, capricious, or without probable cause in failing to pay within the statutory time limit. As noted above, the statute and the jurisprudence place a duty on the insurer to thoroughly investigate a claim within the 60-day time limit to determine whether the claim should be paid. State Farm cannot avoid that duty by arguing that it had insufficient information to decide whether to pay the UM policy limits, especially in light of the clear evidence that Ms. Doak failed to take any action on the claim for almost two months, the exact two months during which she should have been seeking to determine the extent of plaintiff's claim, if the company had questions concerning its liability. Additionally, the jurisprudence in this state indicates that a dispute over the amount owed because of the existence of coinsurance is not a valid defense for an insurer's failure to pay a claim within the time period provided by statute. See Smith v. Louisiana Farm Bureau Casualty Insurance Co., 603 So.2d 199, 206 (La.App. 3d Cir.), writ denied 605 So.2d 1115 (La.1992); Youngblood v. Allstate Fire Insurance Co., 349 So.2d 462, 465 (La.App. 3d Cir.1977).
Accordingly, we find that the trial court's decision that State Farm was arbitrary, capricious, or without probable cause in failing to tender the UM policy limits within 60 days of November of 1989 was not manifestly erroneous. The trial court judgment on this issue is therefore affirmed.

Attorney fees
State Farm also challenges the trial court's award of $5,000 in attorney fees to the Daneys' attorney, claiming that the trial court improperly limited its cross examination of the Daney's attorney and that the award is excessive because it was based on a self-serving affidavit. Specifically, State Farm claims that the trial judge should not have admitted the affidavit and that the trial judge should not have limited the cross-examination to the information contained in the affidavit.
At trial, the Daneys' attorney presented both her contingency fee contract with Ms. Daney, under which she was entitled to 30 percent of the recovery, as well as an affidavit which indicated that she spent a total of 274.50 hours on the case during the four years she was retained by the plaintiffs. During that time, she researched and prepared a motion for summary judgment, a motion for declaratory judgment, a subpoena duces tecum, a memorandum in opposition to a motion to quash the subpoena duces tecum, a pre-trial brief, a trial brief, findings of fact, a letter to her client concerning State Farm's offer of a structured settlement, and letters on the UM tender. Additionally, she attended hearings on the motion for summary judgment, the motion for declaratory judgment, and the motion to quash. Moreover, she prepared for and helped to conduct a trial. Finally, she listed time spent conferring with her client, secretaries, physicians, and "other individuals." The trial judge awarded her $5,000 in attorney fees.
State Farm questions the amount of time that the Daneys' attorney claims to have spent on certain activities in relation to the file. However, the testimony by the Daneys' attorney concerning the amount of time she *955 spent on the various activities associated with the claim is uncontradicted. Thus, we find that the trial court's calculation of attorney fees is not manifestly erroneous.
Additionally, by reply brief, State Farm attempts to argue that the Daneys are not entitled to attorney fees for work performed after March 2, 1990, the date the company tendered the UM policy limits. State Farm cites the language of the statute, which says that the insurer is entitled to "reasonable attorney fees for the prosecution and collection of such loss," claiming that the "loss" is the UM policy limits in this case. In other words, State Farm argues, all the legal activities pursued by the Daneys' attorney after the March 2 tender were not directed toward prosecuting and collecting the "loss," but were instead directed toward collecting penalties and attorney fees.
We refuse to interpret the word "loss" as narrowly as suggested by State Farm. Once the insurance company failed to make timely payment on the policy, as required by statute, the Daneys had losses beyond the actual value of the payments owed by State Farm. For example, the Daneys lost the use of the money for at least a two-month period. Perhaps more importantly, interpretation of the statute as suggested by State Farm would dilute the effect of the penalty provision and therefore be contradictory to the public policy which the statute is designed to promote.
Additionally, the Daneys answered the appeal, requesting an increase in attorney fees for work done on appeal. Such an increase is appropriately awarded to a plaintiff/appellant who is entitled by statutory recovery of attorney fees whenever the defendant/appellant fails to obtain any relief on appeal. Gagnard v. Travelers Insurance Co., 380 So.2d 191, 196 (La.App. 3d Cir.1980). Thus, the attorney fees are increased by $1,000 for work done on appeal.

Taxing of Costs
State Farm also attacks the trial court's March 22, 1993 supplementary judgment concerning costs, saying that the trial court had no authority to enter the judgment because the trial court was divested of jurisdiction when the appeal order was signed on February 17, 1993. Although the judgment is entitled "Judgment on Rule to Tax Costs," State Farm claims that the judgment actually awarded costs since costs were not addressed in the original judgment.
However, under the express provisions of La.C.C.P. art. 1920, costs are automatically taxed against the party cast in judgment "unless the judgment provides otherwise." Moreover, a trial court retains jurisdiction to tax costs even after the appeal order is signed under the provisions of La.C.C.P. art. 2088(10). Thus, State Farm's arguments on this issue are without merit, and the judgment taxing costs is affirmed.

Interest
The trial court judgment does not address interest. However, in their answer to the appeal, the Daneys request that this court render judgment for interest de novo, or that we order the trial court to determine interest.
The jurisprudence is clear that the Daneys are indeed entitled to interest on both the penalties and the attorney fees awarded. Demarest v. Progressive American Insurance Co., 552 So.2d 1329, (La.App. 5th Cir.1989); Doty v. Central Mutual Insurance Co., 186 So.2d 328, 333 (La.App. 3d Cir.), writ denied 249 La. 486, 187 So.2d 451 (1966). Additionally, since proof of the claim was received prior to the time the Daneys filed this lawsuit, legal interest should begin from the date of judicial demand. Ridenour v. Wausau Insurance Co., 627 So.2d 141 (La.1993); King v. Aetna, 552 So.2d 73 (La. App. 3d Cir.1989), writ denied 556 So.2d 1264 (La.1990).
Thus, the judgment is amended to impose legal interest on the award of penalties and attorney fees from the date the petition was filed on December 27, 1989 until the judgment is paid.

Conclusion
Accordingly, the trial court judgment is amended to increase the attorney fees for work performed on appeal by $1,000. The judgment is further amended to impose legal interest on the award from December 27, *956 1989 until paid. In all other respects, the judgment is affirmed.
AMENDED AND AS AMENDED AFFIRMED.