464 So.2d 1015 (1985)
Bradford NELSON
v.
ALLSTATE INSURANCE COMPANY, et al.
No. 84 CA 0107.
Court of Appeal of Louisiana, First Circuit.
February 26, 1985.
*1017 Wendell G. Lindsay, Jr., Baton Rouge, for plaintiff-appellant Bradford Nelson.
Albert Dale Clary, Baton Rouge, for defendant-appellee Standard Fire Ins. Co.
Before WATKINS, CRAIN and ALFORD, JJ.
CRAIN, Judge.
This is an appeal from a judgment of the trial court which dismissed Bradford Nelsons' (appellant) suit to recover penalties and attorney's fees as provided by La.R.S. 22:658.[1]
On June 13, 1981, appellant was seriously injured when his motorbike collided with an automobile driven by Steven Sensat. The collision occurred in Iberville Parish on River Road. An improper left turn by Mr. Sensat was determined to be the sole cause of the accident.
On December 29, 1981, appellant filed suit against Sensat, Sensat's parents and Sensat's liability insurer, Allstate Insurance Company (Allstate). Appellant also joined Standard Fire Insurance Company (Standard) as the uninsured motorist insurer of his vehicle. Appellant alleged that all necessary proof of loss had been furnished Standard substantially prior to 60 days before filing of suit, and Standard was therefore liable for penalties and attorney fees for failing to pay the claim.[2] Appellant also claimed not less than $100,000 from Standard as general damages suffered by him for their refusal to pay.
On May 14, 1982, Allstate deposited into the registry of the court its policy limits of $10,000 plus interest of $450.41. Appellant immediately withdrew these funds and subsequently Allstate and Sensat's parents were dismissed from the suit by summary *1018 judgment. Appellant also dismissed Sensat after receiving a settlement from him just prior to trial.
On October 12, 1982, appellant filed a motion for summary judgment against Standard seeking to force the payment of the $10,000 policy limits under the uninsured motorist policy and the penalty and attorney's fees provided by La.R.S. 22:658.
On October 15, 1982, Standard deposited $10,000 into the registry of the court.
A hearing on the motion for summary judgment was held on December 10, 1982, and summary judgment was denied.
On June 28, 1983, at appellant's request, a jury trial was held solely on the issue of the penalty and attorney's fee. The court ruled that appellant had no cause of action for general damages against Standard and prohibited the introduction of any evidence related to that issue. On that same date the jury returned a 9-3 general verdict in favor of Standard. On July 11, 1983, a judgment was signed in favor of Standard on the issue of the penalty and attorney's fee and appellant's suit was dismissed at his costs.
Appellant then filed a motion for judgment notwithstanding the verdict and for a new trial. After a hearing on August 12, 1983, the court denied this motion, except to amend the July 11th judgment to provide that Standard had to pay legal interest on the $10,000 from the date of judicial demand.
Appellant now appeals the July 11th judgment and the denial of his motion for judgment notwithstanding the verdict and for a new trial. On appeal, appellant alleges ten assignments of error. We find it necessary to determine only that given the stipulated facts, the juries' verdict was contrary to law and the trial court was therefore in error in refusing to grant a judgment notwithstanding the verdict.
La.R.S. 22:658 applies to an "uninsured" or "underinsured" motorist claim. Hart v. Allstate Insurance Company, 437 So.2d 823 (La.1983). A claimant for penalties and attorney fees under La.R.S. 22:658 has the burden of proving that the insurer failed to pay the claim within 60 days after receiving "satisfactory proofs of loss" of the claim, and that the insurer was arbitrary, capricious or without probable cause in failing to pay. A "satisfactory proof of loss" within the meaning of La.R.S. 22:658 is that which is sufficient to fully apprise the insurer of the insured's claim. Hart, 437 So.2d at 828. To establish satisfactory proof of loss under an uninsured motorist claim, the insured must establish that the insurer received sufficient facts to fully apprise the insurer that the owner or operator of the other vehicle involved in the accident was uninsured or underinsured, that he was at fault, that such fault gave rise to damages and the extent of those damages. Hart, 437 So.2d at 828.
The undisputed and stipulated facts are as follows: On August 25, 1981, counsel for appellant sent a letter to Standard demanding payment. Enclosed with this letter was a copy of the accident report, hospital bills for the first thirty days following the accident amounting to $10,630.21, the Sensat policy issued by Allstate, four anesthesiologist bills and two pages of a statement given by appellant while in the hospital on June 24, 1981. Mr. Clary, counsel for Standard, stipulated that in the ensuing months during the investigation it became obvious that the accident was caused solely by the fault of Sensat. Standard also stipulated at trial that as of October, 1981, they were aware that appellant's medical expenses and injuries would exceed $20,000, which would be in excess of both Allstate and Standard's policies. Therefore, it is undisputed that Standard had received sufficient proof of loss as of October, 1981, and failure to make payment within 60 days, if found to have been arbitrary and capricious, would entitle appellant to an award of the penalty and attorney's fee. We now consider Standard's reasons for its failure to pay within this 60 day period, and given those reasons whether the jury could determine the failure to pay was not arbitrary and capricious or without probable cause.
*1019 Mr. Greer, Standard's claims adjuster, testified that it was Standard's policy, when dealing with an uninsured motorist claim, to require proof of payment by the tort feasor's primary insurance provider (Allstate), before paying the underinsured claim. Mr. Greer stated that during a telephone conversation with appellant's attorney, Mr. Lindsay, on September 1, 1981,[3] Mr. Lindsay requested him to make an exception in this case and for Standard to pay for two separate $10,000 policies. The letter dated August 25, 1981, reveals that Mr. Lindsay was in fact demanding that Standard pay $20,000 under the uninsured motorist provisions of the policy. Mr. Greer stated he tried to explain to Mr. Lindsay that the law prohibits his attempt to "stack" uninsured motorist coverage and that Standard had a $10,000 policy limit per person in appellant's policy. He stated that Mr. Lindsay continued to insist that Standard was liable for $20,000. Mr. Greer stated he saw no reason to pay $10,000 if appellant was going to come back and seek $10,000 more.
Mr. Lindsay testified that Mr. Greer took the position that proof that Allstate had paid its policy limits was required before Standard would be obligated to make any payments. Mr. Lindsay stated he informed Mr. Greer that Allstate was not going to pay its $10,000 policy limit unless appellant released Sensat for any amount in excess of $10,000 and that he was in a "Catch 22" situation. However, he stated that Mr. Greer never made any offer to settle at that time.
There is no factual dispute as to why Standard refused to pay. Standard asserted then and still asserts that the first reason for its failure to pay is that Allstate, the primary insurer, must pay its policy limits before Standard is obligated to pay appellant's underinsured claim. There is no such requirement in La.R.S. 22:1406D(1)(a) or in La.R.S. 22:658. Hart, 437 So.2d at 828, explains the requirements necessary to establish satisfactory proof of loss for an uninsured motorist claim to trigger the penalty provisions of La.R.S. 22:658. There is no requirement that the primary carrier pay before the uninsured carrier is required to do so where the proof of loss requirements of Hart have been met. Standard was aware that Sensat's policy with Allstate had a $10,000 policy limit rendering Sensat underinsured. Standard knew that Sensat was at fault. Standard knew that this fault gave rise to appellant's damages and that these damages exceeded $20,000. Accordingly, there was no reason for Standard to wait for the primary insurer to pay. Standard knew it was liable for $10,000 and knew it was going to have to pay that amount sooner or later. Under La. 22:658 and Hart it could not choose later.
For the first time on appeal Standard points to a provision in its policy that provides:
The company shall not be obligated to make any payment because of bodily injury... which arises out of the ownership, maintenance or use of an uninsured motor vehicle ... until after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements.[4]
A literal application of this section would require that a liability carrier pay a judgment rendered against it before the uninsured/underinsured *1020 motorist carrier would have to pay anything even though the uninsured motorist carrier knew its liability. This would result in an underinsured motorist carrier not having to pay until a case against the liability carrier is tried, appealed and eventually paid. This provision conflicts with La.R.S. 22:658. It conflicts with Hart. Consequently, we consider the policy provision to be contrary to the statutes and jurisprudence of the state and invalid. See Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972).
We do not find another case where this policy provision has been declared invalid. Consequently, it would normally present a res nova issue that would militate against finding Standard arbitrary, capricious or without probable cause in refusing to make payment. Breland v. Louisiana Hospital Services, Inc., d/b/a Blue Cross of Louisiana (La.App. 1st Cir.1984) (Docket No. 83 CA 1247, Decided December 7, 1984). Here though, it is apparent that although the policy provision is argued as a reason for not making payment, it was not in fact a reason. The liability carrier, Allstate, actually paid their policy limits on May 14, 1982. Standard did not deposit their policy limits until October 15, 1982 and that was in response to a motion for summary judgment. A deposit of their policy limits within 60 days of payment by Allstate would have furnished the jury valid reason for finding Standard was not in violation of La.R.S. 22:658. A deposit some 5 months after payment by the liability carrier and then only in response to a motion for summary judgment is not a legal defense to application of La.R.S. 22:658.
Standard also argues a provision in its policy allows payment to be contingent on the execution of a right of subrogation by its insured, pointing out that Bond v. Commercial Union Assurance Co., 407 So.2d 401 (La.1981) which authorized subrogation solely on the policy provisions was not decided until after the incident occurred. Actually, Bond was decided on rehearing in November of 1981. We have decided the 60 day grace period of La.R.S. 22:658 began to run in this case in October of 1981. Consequently, Standard had the benefit of Bond when payment would still have been timely to avoid penalties and attorney fees. In any event the policy provision relied on by Standard does not make payment contingent upon execution of a right of subrogation by the insured. It provides that "In the event of any payment... the Insured shall execute and deliver... papers ..." that will secure the right of subrogation. Here there was no payment so the insured was never called upon to comply with the policy provisions.
Standard's second reason for its failure to pay is that appellant was incorrectly seeking to stack the uninsured motorist coverages on both insured vehicles under the policy for a total of $20,000 and that it would be useless to pay appellant $10,000 if he was going to come back and seek $10,000 more.
Standard stipulated at trial that as of October, 1981, it was aware that appellant's medical expenses and injuries would exceed $20,000. Standard was also aware that Sensat's policy with Allstate had a $10,000 limit. Therefore, even though appellant was demanding $20,000 from Standard, it knew and admitted at trial that it was liable for the $10,000 uninsured motorist limit.
In Sibley v. Insured Lloyds, 442 So.2d 627 (La.App. 1st Cir.1983), this court held that where there is a reasonable dispute as to the amount of loss, the insurer can avoid the imposition of penalties including attorney fees by unconditionally tendering the part of the claim it considers undisputed. However, if the insurer conditions its offer to pay an undisputed amount on the insured's acceptance thereof in full settlement, the offer is not viewed as an unconditional tender for purposes of La.R.S. 22:658. O'Brian v. Allstate Insurance Company, 420 So.2d 1222 (La.App. 3rd Cir. 1982).
Standard admitted it was liable for its $10,000 policy limit. However, the record reflects there was never an unconditional *1021 tender by Standard of the $10,000 which it admits was owed. Accordingly, we find Standard's second reason for its failure to pay appellant without legal basis.
Standard admits facts that constitute a proof of loss under Hart. Consequently, its refusal to pay was without probable cause and the juries' failure to assess penalties and attorney fees was wrong as a matter of law. The trial court should have granted a judgment notwithstanding verdict. Failure to do so was error.
Appellant alleges general damages are recoverable under La.R.S. 22:658. He argues that a contract of insurance has for its object the gratification of some intellectual enjoyment bringing proof of such a claim under the ambit of La.C.C. art. 1934(3). This article provides a legal basis for an award of general damages where a contract has for its object the gratification of some intellectual enjoyment. However, in Tano Corporation v. Louisiana Health Service & Indemnity Company, 355 So.2d 604 (La.App. 4th Cir.1978), the court specifically rejected a claim for mental anguish and suffering finding that a contract for medical and health insurance is a contract for the payment of money only and does not have for its object intellectual gratification. We hold the same is true of an uninsured motorist policy. Accordingly, the trial court was correct in refusing to allow evidence of general damages.
Appellant alleges that the trial court erred in not letting the jury consider any evidence as to the amount of the attorney's fees. We agree. The issue of the amount of an attorney's fee is a question of fact and appellant should have been allowed to present evidence on this issue to the jury. However, the trial court allowed evidence to be presented to him on the amount of attorney fees. Consequently, the record contains sufficient evidence from which we can determine a reasonable attorney's fee and in the interest of judicial economy, it is necessary that we do so. Gonzales v. Southwest Mobile Homes, Inc., 309 So.2d 780 (La.App. 3rd Cir.1975), writ denied, 313 So.2d 239 (La.1975). Accordingly, we award $5,000 as a reasonable attorney's fee to appellant. Of this amount, $1000.00 is awarded for services rendered on this appeal.
Appellant alleges the trial court erred in not allowing him to introduce evidence as to out-of-pocket expenses incurred in pursuing the claim against Standard. We disagree. La.R.S. 22:658 provides for the recovery of "all reasonable attorney's fees for the prosecution and collection" of a claim. The statute does not provide for recovery of out-of-pocket expenses as a separate item. This statute is penal in nature and, consequently, must be strictly construed. Hart, 437 So.2d 823 (La.1983). Accordingly, we find no merit to this assignment of error.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed. Standard is ordered to pay the 12% penalty ($1200). We also award $5,000 as a reasonable attorney's fee. Legal interest on the $1200 penalty and $4,000 of the attorney's fee awarded for services rendered before this appeal, is owed from January 1, 1982,[5] until paid. Legal interest on the $1,000 attorney's fee awarded for services rendered on appeal begins to run as of the date of this decision. Haynes v. Standard Fire Insurance Company, 370 So.2d 118 (La.App. 1st Cir.1979). All costs are assessed to Standard.[6]
REVERSED AND RENDERED.
NOTES
[1] La.R.S. 22:658 provides as follows:

All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make any such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees.
[2] The policy limit in the Standard policy is $10,000 plus $1000 medical. Plaintiff sued for $20,000 plus the $1000 medical under the erroneous theory that he was entitled to "stack" policies. As will be shown the fact that plaintiff sued Standard for more than he was legally entitled to recover does not affect his right to recover penalties including attorney fees for Standard's failure to pay what the policy provided.
[3] We specifically note that this conversation was the only negotiations between Mr. Greer and Mr. Lindsay prior to or during the 60 days following receipt of sufficient proof of loss in October, 1981. Although both sides introduced evidence of the content of negotiations in April and May of 1982, this evidence is not relevant to our determination of whether Standard's refusal to pay within 60 days after receipt of proof of loss was arbitrary and capricious.
[4] This provision is found under a section of the policy entitled:

"UNINSURED MOTORISTS INSURANCE AMENDMENT
(Louisiana)
3...".
Appellee refers to the policy without even referring to the location of the pertinent section in the policy.
[5] The record reveals that by the end of October, 1981, Standard had all of the information necessary for the proof of loss. Therefore, the sixty days as specified in La.R.S. 22:658 would have run by the end of December, 1981. We find that as of January 1, 1982, Standard was arbitrary and capricious in not paying the claim and that interest should commence as of January 1, 1982.
[6] In assignment of error number one appellant argues the trial court erred in assessing him with all court costs. It becomes unnecessary for us to address this issue having reversed the judgment of the trial court, since we now assess all costs to Standard.