484 So.2d 753 (1986)
James A. BURTON, Jr.
v.
John Dudley FORET and Casualty Reciprocal Exchange Company, All State Insurance Company[*].
No. CA841223.
Court of Appeal of Louisiana, First Circuit.
February 25, 1986.
*756 Stephen M. Larussa, Houma, for plaintiff and appelleeJames A. Burton, Jr.
Christopher P. Riviere, Thibodaux, for third party defendant and appellantAll State Ins. Co.
Diana Zink, Quentin Urquhart, Jr., New Orleans, for defendantCasualty Reciprocal Exchange Ins. Co.
Before CARTER, SAVOIE and ALFORD, JJ.
ALFORD, Judge.
This is an appeal from a judgment of the trial court in which a jury returned a verdict in favor of plaintiff, James Burton, Jr., and against defendant, Allstate Insurance Company (Allstate). Mr. Burton was awarded $186,500.00 plus penalties and attorney's fees for injuries sustained in an automobile accident.

FACTS
On September 23, 1981, Mr. Burton, a thirty-year-old cabinet maker and shop foreman, was injured when a pickup truck he was operating was struck by a truck driven by defendant, John Foret, Jr. The 1978 Datsun truck driven by Mr. Burton was owned by Mrs. Iris Chauvin.
Mr. Burton filed suit on May 10, 1982, against Mr. Foret and his insurer, Casualty Reciprocal Exchange Company (Casualty), alleging that he sustained injuries to his neck, back and body. Mr. Burton later filed a first supplemental and amended petition wherein he named Allstate, Mrs. Chauvin's uninsured motorist carrier, as an additional defendant. The liability of Mr. Foret was stipulated prior to trial and Casualty tendered Mr. Foret's $5,000 policy limits which was accepted by Mr. Burton.
After trial on the merits, the jury returned the following answers to interrogatories, finding Allstate liable to Mr. Burton.
A. Past medical expenses: $14,000.
B. Future medical expenses: $4,000.
C. Past physical pain and suffering: $10,000.
D. Future physical pain and suffering: $20,000.
E. Past mental pain and suffering, mental anguish and distress: $20,000.
F. Future mental pain and suffering, mental anguish and distress: $10,000.
G. Past lost wages: $21,000.
H. Future lost wages and impairment of earnings capacity: $80,000.
I. Physical disability: $7,500.
Total: $186,500.
No. 3: If your answer to Question 1 was "Yes", was the defendant Allstate Insurance Company arbitrary, capricious, or without probable cause in refusing to pay plaintiff's claim?
Answer: Yes.
No. 4: If your answer to Question 3 was "Yes" express below in dollar amounts the total amount which Mr. Burton is entitled to, and which was provided by the evidence for attorney fees:
Answer: $16,500......
Allstate appealed assigning the following specifications of error:
1. The trial court erred in allowing the policy limits of the Allstate policy to be presented to the jury.
2. The jury erred in finding that Mr. Burton's back injury was related to the accident.
3. The jury erred in awarding excessive damages.
4. The jury erred in finding that Allstate acted arbitrarily and capriciously in failing to pay Mr. Burton's claim.

DISCLOSURE OF POLICY LIMITS TO THE JURY
Allstate contends that the trial court committed manifest error and that it was denied equal protection under the laws as mandated by both the federal and state constitutions as a result of the trial court allowing reference to the $100,000 Allstate policy limits. The policy limits were mentioned by Mr. Burton's counsel during his opening statement and by Mr. Richard Hagey, Allstate's claims adjuster in charge of *757 Mr. Burton's claim, during cross-examination by Mr. Burton's counsel.
At trial, the Allstate insurance policy was entered into evidence by joint stipulation of counsel. (Emphasis ours). Mr. Burton contends that evidence of pre-trial settlement negotiations and the policy limits were necessary to establish that Allstate was arbitrary, capricious and without probable cause in failing to pay Mr. Burton's claim. It also appears that Allstate felt that evidence of the policy limits was necessary in providing the jury with evidence of the pre-trial settlement negotiations. At trial, Allstate's attorney elicited the amount of the policy limits from its witness, Mr. Hagey. The following colloquy took place between Allstate's attorney and Mr. Hagey during direct examination:
Q. At some point in time an offer was made; is that correct?
A. Yes, it was.
Q. What was that offer?
A. My offer, Allstate's offer, was that of $40,000 to the plaintiff.
Q. What was the plaintiff's offer?
A. Policy limits.
Q. And how much was that, sir?
A. The policy limits?
Q. Yes, sir.
A. $100,000.
Pre-trial settlement negotiations are admissible for the purpose of testing the insurer's conduct in handling the claims being asserted by its insured under the uninsured motorist coverage. Launey v. Thomas, 379 So.2d 27 (La.App. 3rd Cir. 1979), writ denied, 381 So.2d 1233 (La. 1980). It is apparent that both parties felt that the amount of the policy limits was a necessary factor in the determination of whether Allstate's conduct in failing to pay Mr. Burton's claim was arbitrary or capricious. It must be noted that the jury was charged that the evidence of the pre-trial settlement negotiations was to be considered only for the specific purpose of determining whether Allstate acted arbitrarily, capriciously and without probable cause in failing to pay Mr. Burton's claim.
Furthermore, in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), counsel for plaintiff and defendant had stipulated the insurance coverage and its limits. The trial court refused to inform the jury as to the contents of the stipulation. The supreme court held that the trial court committed manifest error, stating: "In a jury trial, the jury is entitled to know all the evidence. We know of no statute or jurisprudence which, in the absence of agreement between the litigants, would permit admissible evidence to be withheld from the jury." Bishop v. Shelter Insurance Company, 461 So.2d 1170 (La.App. 3rd Cir. 1984), writ denied, 465 So.2d 737 (La.1985).
In light of the fact that both counsel entered the policy into evidence by stipulation and more importantly, Allstate's own witness testified as to the amount of the policy limits, we find that the trial court was not clearly wrong in allowing the policy limits into evidence for such a limited purpose. Likewise, we find that Allstate was not denied its equal protection under the laws.

CAUSATION
Allstate contends that the jury erred in finding that Mr. Burton's back injury was caused by the accident. Allstate asserts that Mr. Burton did not complain of back pain until about one year after the accident. Four of Mr. Burton's treating physicians testified that they had no records of back pain experienced by Mr. Burton. However, Mr. Burton testified at trial that he may have complained about his back but did not persist with complaints.
Dr. R.C. Llewellyn, a neurosurgeon, treated and performed surgery on Mr. Burton. Dr. Llewellyn, who was accepted by the court as an expert in neurological surgery, testified that a CT scan of Mr. Burton's lower back revealed muscle and ligament sprains to the L-4, L-5, and L-5, S-1 discs. Dr. Llewellyn was of the opinion that Mr. Burton's back injury was a direct result of the accident.
*758 Dr. Richard Levy, who was also accepted by the court as an expert in neurological surgery, examined Mr. Burton at the request of Allstate. Dr. Levy, who examined Mr. Burton for a total of 13 minutes, testified that he was of the opinion that the back injury was not related to the accident.
Apparently, after hearing all of the conflicting testimony, the jury gave great weight to the testimony of Dr. Llewellyn and found that Mr. Burton's back injury was caused by the accident. A reviewing court must give great weight to the factual conclusions of the trier of fact and where there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed, even though the reviewing court may feel that its own evaluations and inferences are as reasonable. Canter v. Koehring, 283 So.2d 716 (La.1973). Accordingly, we find no manifest error on the part of the jury in finding that Mr. Burton's back injury resulted from the accident.

QUANTUM
After the accident, Mr. Burton was seen by Dr. Mary Eschete who diagnosed him as having muscular skeletal pain and prescribed a pain reliever. Mr. Burton's pain continued and he consulted his family physician, Dr. William Marmande, on October 7, 1981. Dr. Marmande, who was accepted by the court as an expert in family practice, testified at trial that he diagnosed Mr. Burton as having a cervical strain. He treated Mr. Burton on a weekly basis for several months, prescribing muscle relaxants and an analgesic for pain. Mr. Burton also received physical therapy and after showing no improvement, Dr. Marmande referred Mr. Burton to Dr. Gary Guidry, an orthopedic surgeon.
Dr. Guidry first saw Mr. Burton on January 7, 1982, and treated him until October of the same year. Dr. Guidry, who was accepted by the court as an expert in the field of orthopedic surgery, testified that he diagnosed Mr. Burton as having a cervical strain. He also prescribed physical therapy. A myelogram and CT scan were performed which were reported as normal. Dr. Guidry was not able to alleviate Mr. Burton's pain with conservative measures and referred him to Dr. John Jackson. Dr. Jackson, who was accepted by the court as an expert in the field of neurological surgery, testified in a deposition entered into evidence that he diagnosed Mr. Burton as having a possible ruptured cervical disc.
Mr. Burton was still experiencing pain in September of 1982 and consulted Dr. Llewellyn. Dr. Llewellyn examined Mr. Burton and later hospitalized him for diagnostic tests on January 9, 1983. Mr. Burton remained in the hospital until January 21, 1983. While in the hospital, a discogram was performed that revealed an irreparable tear of the C-5, C-6 disc. Dr. Llewellyn performed surgery and conducted a diskectomy or removal of the torn disc. Dr. Llewellyn's examination and a CT scan revealed Mr. Burton's above-mentioned lower back sprains in the lumbar area.
Allstate contends that the jury's award of $67,500 in general damages and disability was excessive. The sufficiency or insufficiency of an award for damages should be determined by the facts and circumstances peculiar to the case. Before an award may be questioned as inadequate or excessive, the reviewing court must look to the individual circumstances of the instant case. This initial inquiry must be directed to whether the award for the particular injuries and their effects upon the particular injured person is a clear abuse of the trier of fact's much discretion. Reck v. Stevens, 373 So.2d 498 (La.1979).
In this initial determination of excessiveness, an examination of prior awards has a limited function and may serve as an aid in this determination only when the present award is greatly disproportionate to the mass of awards in prior cases involving similar injuries, facts and circumstances. Reck, 373 So.2d at 501. Mr. Burton was last examined by Dr. Llewellyn on April 4, 1984, approximately six weeks before trial. Dr. Llewellyn testified that Mr. Burton was still experiencing pain in the posterior cervical muscles and had *759 some discomfort extending into his left shoulder and arm. Dr. Llewellyn felt that the low back injury was improving, however, there was some muscle soreness and spasm in the low back area. There was also some limitation in waist-bending movements and some discomfort in Mr. Burton's right leg.
In the present case, Mr. Burton has experienced pain since the occurrence of the accident. He has undergone numerous painful diagnostic tests and has had dangerous surgery performed. He has been forced to adjust his lifestyle as a result of his injuries and there exists a possibility of future hospitalization.
Our examination of authorities involving similar instances of such awards and our consideration of the record leads to the conclusion that the jury's award of $67,500 in damages for pain and suffering and disability is not so high as to constitute a clear abuse of the discretion vested in the jury.
Allstate contends that the jury erred in awarding Mr. Burton $21,000 for past lost wages and $80,000 for future lost income and impairment of earning capacity. Dr. Llewellyn assigned Mr. Burton a seven and one-half percent anatomical permanent disability as a result of the cervical injury. He assigned a one hundred percent functional disability, because of the neck and low back injuries, in jobs in which Mr. Burton would have to jump, climb or lift 25 pounds or more. The record reflects that these restrictions would prevent Mr. Burton from performing his duties as a cabinet maker. Dr. Llewellyn testified that Mr. Burton could work at some occupation where he could alternate sitting and standing, such as some type of bench trade.
Dr. Craig Feldbaum, who was accepted by the court as an expert in the field of industrial and vocational rehabilitation psychology, testified that after testing and evaluating Mr. Burton, he felt that Mr. Burton could secure a job with an entry-level wage rate of approximately $5/hr. or with some training, about $12,000/yr. Mr. Burton's hourly rate at the time of the accident was approximately $10/hr. It is therefore evident that Mr. Burton would have considerable future wage loss.
Mr. Burton was out of work for almost one and one-half years as a result of his injuries. Income tax returns entered into evidence revealed that Mr. Burton earned $16,484.84 in 1982 and $21,011.75 in 1981.
Dr. Seymour S. Goodman, who was accepted by the court as an expert in the field of economics, testified that Mr. Burton had past lost wages of $28,399.21. He also testified that Mr. Burton had a work-life expectancy of 28.6 years and estimated his lost future earnings at between $403,581.08 and $419,572.70.
After a careful review of the record we can not say that the jury abused its "much discretion" in awarding Mr. Burton damages for lost wages. We note that Allstate produced no experts to give testimony of their own for the jury to weigh against that of Drs. Goodman and Feldbaum. Therefore, their opinion was the only evidence on the issue of lost wages which the jury had before it, and apparently the jury was of the opinion that Allstate was unable to discredit this testimony. One must also note that the jury's awards for lost wages were considerably lower than Dr. Goodman's calculations.
We, therefore, conclude that the record substantiates that the jury did not abuse its "much discretion" in awarding Mr. Burton $21,000 for past lost wages and $80,000 for future lost wages and impairment of earning capacity.

PENALTIES AND ATTORNEY'S FEES
The jury found that Allstate acted arbitrarily, capriciously and without probable cause in failing to pay Mr. Burton's claim and awarded penalties and attorney's fees pursuant to LSA-R.S. 22:658. In Hart v. Allstate Insurance Company, 437 So.2d 823 (La.1983), the Louisiana Supreme Court held that R.S. 22:658 applied to uninsured or underinsured motorist's claims. A claimant under this statute has *760 the burden of proving that the insurer failed to pay the claim within 60 days after receiving "satisfactory proof of loss" of the claim, and that the insurer was arbitrary or capricious in failing to pay. A "satisfactory proof of loss" within the meaning of the statute is that which is sufficient to fully apprise the insurer of the claim. Hart, 437 So.2d at 828. To establish a "satisfactory proof of loss" of an uninsured/underinsured motorist's claim, the insured must establish that the insurer received sufficient facts which fully apprise the insurer that (1) the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; (2) that he was at fault; (3) that such fault gave rise to damages; and (4) establish the extent of those damages. The record reflects that the first three elements were proved without doubt.
Allstate was notified of the accident two days after it occurred. All doctors that examined Mr. Burton were of the opinion that he did have some type of injury as a result of the accident. Mr. Hagey testified that as of January, 1983, he had all of the information that he needed. He further testified that he felt that Mr. Burton's neck and back injuries were not caused by the accident and therefore Allstate did not pay.
We are of the opinion that Allstate received a sufficient proof of loss and failed to pay within 60 days. We must now determine if the jury was clearly wrong in finding that Allstate acted arbitrarily and capriciously.
When there is a dispute as to the nature of the loss, the insurer's refusal to pay the claim is not arbitrary or capricious. Reed v. United States Fidelity and Guaranty Company, 302 So.2d 354 (La.App. 3rd Cir.1974). Allstate contends that there was an actual dispute and further that it offered Mr. Burton $40,000 in settlement, as evidence of its good faith, which Mr. Burton refused.
An insurer can avoid paying penalties and attorney's fees by unconditionally tendering the undisputed amount of the claim in cases where there is a reasonable disagreement over the total amount owed. The offer of payment in exchange for a complete release of the insured's claim is not a tender within the contemplation of the statute. Fuselier v. La. Farm Bureau Mutual Insurance Company, 458 So.2d 657 (La.App. 3rd Cir. 1984). Allstate's adjuster, Mr. Hagey, admitted that the $40,000 offer was conditioned upon a total release. Furthermore, he testified that at no time did Allstate make an unconditional offer of money to Mr. Burton.
Recently, the Louisiana Supreme Court in McDill v. UTICA Mutual Insurance Company, 475 So.2d 1085 (La.1985) stated:
If the first three elements of the Hart test are satisfied and the insured has made a showing that the insurer will be liable for some general damages, the insurer must tender the reasonable amount which is due. This amount would be unconditionally tendered to the plaintiff not in settlement of the case, but to show their good faith in the matter and to comply with the duties imposed upon them under their contract of insurance with the insured. The amount that is due would be a figure over which reasonable minds could not differ.
In the present case, there was clearly a dispute as to the amount of damages and the extent of Mr. Burton's injuries. However, there is little dispute that Allstate had some liability to Mr. Burton for the injuries that he did sustain. Had Allstate unconditionally tendered some reasonable amount of damages, they would not have been arbitrary or capricious and therefore not subject to penalties and attorney's fees.
After a careful review of the record, we conclude that the jury was not clearly wrong in finding that Allstate acted arbitrarily and capriciously.
Therefore, for the foregoing reasons, we affirm the judgment of the trial court in all respects. Costs of this appeal are to be *761 borne by appellant, Allstate Insurance Company.
AFFIRMED.
NOTES
[*] The cover of the suit record reflects that All State Insurance Company was added as a party defendant on October 19, 1982.