540 So.2d 1097 (1989)
Brent GUITREAU
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.
No. CA 87 1793.
Court of Appeal of Louisiana, First Circuit.
February 28, 1989.
Rehearing Denied April 26, 1989.
*1098 James R. Coxe, III, Baton Rouge, for plaintiffs-appellees Brent Guitreau, Gerald Guitreau, Shirley Johnson.
Richard Creed, Jr., Baton Rouge, for defendant-appellant State Farm Mut. Auto. Ins. Co.
Donald R. Smith, Baton Rouge, for defendant-appellee Prudential Property and Cas. Ins. Co.
Before WATKINS, CRAIN and ALFORD, JJ.
ALFORD, Judge.
Defendant/Appellant, State Farm Mutual Automobile Insurance Co. (hereinafter referred to as "State Farm"), brings the present appeal from a judgment in the trial court in favor of the plaintiff, Brent Guitreau, appellee herein.[1] Following a trial by jury, Mr. Guitreau was awarded[2] the sum of $25,000 plus statutory penalties and attorney fees for personal injuries he sustained in a motorcycle automobile collision.
On appeal, State Farm makes the following assignments of error:
1) the jury erred in finding plaintiff met his burden of proving his injury was more than a three month thoracic sprain;
2) the jury erred in granting an excessive quantum award of $25,000.00;
3) the jury erred in finding that State Farm's failure to make a tender was arbitrary and capricious;
*1099 4) the court erred in holding State Farm was not entitled to a credit for the amounts paid by Prudential and/or American Hardware Mutual; and,
5) the court erred in not letting the jury hear the opinion testimony of Don Smith.

FACTS
On April 8, 1984, Mr. Guitreau was riding a 1981 Honda motorcycle owned by Michael Weber and covered by an uninsured motorist policy issued by State Farm. While riding the motorcycle, Mr. Guitreau was struck by an automobile driven by Denise Sanders and owned by Willie Sanders. It was stipulated at trial that Ms. Sanders was at fault and that she was an uninsured motorist.
As a result of this accident, Mr. Guitreau suffered bruises and contusions on his elbows and legs and injury to his neck and back. Immediately following the accident, Mr. Guitreau was taken to Baton Rouge General Hospital. The medical testimony reflects that Mr. Guitreau was complaining of pain between his shoulders and he indicated to hospital personnel that the pain was in the same area in which he had sustained an injury in a previous three-wheeler accident. Dr. Flynn, the neurosurgeon treating Mr. Guitreau in the emergency room on that date, testified that Mr. Guitreau denied having pain in his neck. Mr. Guitreau testified at trial that he did suffer neck pains as well as back pains and that he did report the pain.
The x-rays taken during the emergency room examination showed a subluxation or abnormal positioning of the C2 vertebrae onto the C3 vertebrae. Because of this abnormality, Dr. Flynn testified that Mr. Guitreau was admitted to the hospital for testing to determine whether the subluxation was caused by a soft tissue injury or cervical fracture. Following a CAT scan, a polytogram and flexion extension x-rays, Dr. Flynn could find no instability of the spine and concluded that the subluxation was not caused by the accident, but rather pre-existed the accident and was perhaps congenital. Nevertheless, as a cautionary measure, Dr. Flynn had Mr. Guitreau fitted with a neck brace. Mr. Guitreau was discharged from the hospital April 12, 1984.
On April 20, 1984, Mr. Guitreau was involved in another accident. Mr. Guitreau was a passenger in an automobile, driven by Wade Seal and covered by an uninsured motorist policy issued by American Hardware Mutual, which was struck by another automobile driven by an uninsured motorist, Charles B. Falcon. As a result of this head-on collision Wade Seal was killed and Mr. Guitreau sustained personal injuries which included a cut across his eye, lacerations with glass fragments in the elbow and back and a blow to the neck sufficient to irreparably bend part of the neck brace he was wearing. Mr. Guitreau was hospitalized for three days at Our Lady of the Lake Regional Medical Center following this accident.
Following his release, Mr. Guitreau was required to wear the neck brace for approximately two more months. During subsequent visits to Dr. Flynn on April 27th, May 3rd, and June 7th, Mr. Guitreau admits complaining very little of pain. Dr. Flynn testified that his complaints of pain were basically limited to the thoracic area of his back. On July 12, 1984, Dr. Flynn stated that he discharged Mr. Guitreau as cured. Mr. Guitreau testified that he indicated to Dr. Flynn that he had no symptoms so that he could return to work.
On December 5, 1984, Mr. Guitreau returned to Dr. Flynn complaining of severe pain, following strenuous shoveling of dirt. Dr. Flynn indicated that at this time Mr. Guitreau expressed his first complaints of neck pain. Dr. Flynn did not see Mr. Guitreau again until August of 1985 following yet another automobile accident.
As a result of the 1984 accidents, Dr. Flynn opined that Mr. Guitreau suffered a strain of his thoracic back, that he suffered no neck injury and that he had sustained no permanent disability. Dr. Flynn did admit that it is possible to have what is known as "referred pain" to the thoracic area of the back with a cervical subluxation, but that he had never seen such pain without pain at the site of the injury. Dr. Flynn also *1100 indicated that later developing degenerative changes can occur with a subluxation which would at some point require surgical intervention, but that he did not believe such a prospect was applicable to Mr. Guitreau's situation.
Several other physicians who had examined Mr. Guitreau at various times testified by deposition, all of whom deferred any opinion they expressed on Mr. Guitreau's condition to that of Dr. Flynn, noting that as treating physician Dr. Flynn would be in a better position to evaluate the patient's condition. However, Dr. Barry Rills, an orthopedic surgeon, opined that the 1984 accidents could have aggravated a pre-existing congenital subluxation thereby producing symptoms. Dr. William Fisher, a neurosurgeon, also indicated that a congenital subluxation can be made symtomatic by an accident, but he noted that it would be unusual. Additionally, Dr. Frank McMains, an orthopedic surgeon, testified that he knew of no test available to date that could determine when a subluxation occurred without pre-accident x-rays.
Mr. Guitreau sought treatment from Dr. Connie Bryant, a licensed chiropractor, on April 7, 1987, complaining of symptoms which included headaches, eye twitching, muscle spasms around the eyes, and extreme pain in the movement of the neck. Dr. Bryant diagnosed a large subluxation of the C2-C3 vertebrae and thoracic problems "from ranges 4 to 7." Dr. Bryant testified at trial that she had treated Mr. Guitreau's thoracic back following his March 16, 1984 three-wheeler accident. Dr. Bryant further testified that when she examined his cervical spine at that time, the subluxation was not present.
Brent Guitreau testified that he was in the eleventh grade of high school when the accidents in question occurred. As a result, he testified that he was unable to try out for the baseball team although he had previously participated in the sport. Mr. Guitreau also testified that until recently, he has had difficulty working because of the pain he suffers. Mr. Guitreau further testified that he continues to be in pain, that in the mornings he has burning sensations which move down his neck and later in the day his neck and shoulders become stiff. Mr. Guitreau maintains that his neck pains have gotten progressively worse since the time of the accident.

DAMAGE AWARD
State Farm contends that the damage award by the jury of $25,000.00 indicated a finding that Mr. Guitreau suffered from an injury of greater severity than a thoracic strain of three months duration, and that such a finding is erroneous. It was not disputed that Mr. Guitreau suffered at the very least a thoracic strain of his back along with the various bruises and contusions to his legs and elbows as a result of the April 8, 1984 accident. It is likewise undisputed that Mr. Guitreau spent roughly three and one-half days in the hospital immediately following the accident, underwent numerous diagnostic tests, wore a neck brace for several months, and was prescribed muscle relaxants for his pain. However the medical evidence is conflicting as to whether Mr. Guitreau also suffered a cervical subluxation as a result of that accident. Mr. Guitreau continued to complain of severe pain on the date of trial, three years after the accident.
Based on the record as a whole, we believe there was sufficient evidence for the jury to have concluded that Mr. Guitreau suffered a subluxation during the accident in question. Where there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed, even though this court may deem other inferences and evaluations as reasonable. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973). Although the jury's responses to the jury interrogatories did not state specifically whether it found the cervical subluxation to have resulted from the accident, such a conclusion is not manifestly erroneous.
State Farm further contends that the jury award of $25,000.00 in damages is erroneous. Judgments awarding damages can encompass both general and special *1101 damages in an in globo award. See Smith v. Travelers Indemnity Co. of Rhode Island, 374 So.2d 708 (La.App. 1st Cir.1979). The record reflects that $2,857.35 in special damages were incurred as a result of the April 8, 1984 accident exclusively. Thus, we can infer that $22,142.65 of the damage award consisted of general damages. See Slaughter v. Royal Globe Insurance Co., 426 So.2d 377 (La.App. 2d Cir.), writ denied, 433 So.2d 166 (La.1983).
Before a reviewing court can alter an award of general damages, it must first be determined that the trial court has abused its much discretion. La.Civ.Code art. 2324.1; Reck v. Stevens, 373 So.2d 498 (La.1979). It is only by an examination of the particular injuries and circumstances of the individual case before it, that the court can determine the excessiveness or inadequacy of an award. 373 So.2d at 501. After an examination of the facts of this case, we are unable to find that the trial court has abused its much discretion in awarding these damages. Accordingly, the damage award of $25,000.00 should be affirmed.

EFFECT OF SETTLEMENT WITH PRUDENTIAL AND AMERICAN HARDWARE MUTUAL
State Farm claims that it is entitled to a credit for the amounts paid in connection with the settlement agreements entered into by Mr. Guitreau with Prudential and/or American Hardware Mutual. State Farm cites Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982), for its holding that an uninsured motorist carrier and the tortfeasor are solidary obligors; and also, Fertitta v. Allstate Ins. Co., 462 So.2d 159 (La.1985), for its reaffirmation of Hoefly.
We believe the Fertitta Court impliedly disposed of this issue by granting certiorari and rendering a decision "limited to the issue of credit to the tortfeasor on account of partial payment of tort damages by the uninsured motorist carrier." 462 So.2d at 162. (Emphasis added.) The Court specifically noted the reasoning of the court of appeal "that there was `no solidary obligation between Allstate [the tortfeasor's insurer] and State Farm [the underinsured motorist carrier] since State Farm's obligation does not come into effect until Allstate's obligations have been fulfilled'." Id. The court went on to explain the nature of the solidarity imposed by Hoefly, that Allstate and the tortfeasor were solidarily obligated to the limits of the Allstate policy, and that, State Farm and the tortfeasor were solidarily obligated in the amount that exceeded the limits of the Allstate policy. Id.
In the present case, we can immediately reject that portion of State Farm's argument claiming credit for amounts paid in settlement of the accident occurring April 20, 1984. The judgment rendered below against State Farm involved only those injuries sustained by Mr. Guitreau in the April 8, 1984 accident. The only settlement payment made pertaining to the April 8th accident was by Prudential, in the amount of $5,000.00.
Since State Farm was the uninsured motorist carrier providing coverage for the vehicle on which Mr. Guitreau was riding, it is primary. La.R.S. 22:1406(D)(1)(c). Prudential provided uninsured motorist coverage to Mr. Guitreau personally, and its limits would only be available to pay his damages in the event that the State Farm coverage is exhausted. Id. Consequently, State Farm and Prudential are not obliged to the same thing; therefore, they are not solidary obligors and State Farm is not entitled to credit for the Prudential payment. See also, Lipps v. Bernstein, 508 So.2d 178 (La.App. 4th Cir.), modified on other grounds, 512 So.2d 426 (La.1987). Accordingly, the trial court decision to disallow the requested credits should be affirmed.

PENALTIES AND ATTORNEY FEES
State Farm also appeals the judgment of the trial court imposing penalties and attorney fees. An insurer becomes liable for penalties and attorney fees under La.R.S. 22:658 upon failure to tender payment within sixty days after receiving "satisfactory proof of loss," which is established *1102 when the insurer receives sufficient facts which fully apprise the insurer (1) that the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; (2) that he was at fault; (3) that such fault gave rise to damages; and (4) as to the extent of damages. Hart v. Allstate Ins. Co., 437 So.2d 823 (La.1983). When the first three elements are satisfied and the claimant has made a showing that the insurer will be liable for some general damages, the insurer must unconditionally tender the undisputed amount due. McDill v. Utica Mutual Ins. Co., 475 So.2d 1085 (La.1985); Burton v. Foret, 484 So.2d 753 (La.App 1st Cir.), affirmed, 498 So.2d 706 (La.1986).
State Farm admits having acquired the information required by the first three elements as set out in Hart by January 14, 1986; however, it claims that because of the payments made by the other insurers, Mr. Guitreau had been sufficiently compensated for his injuries. To date, no amounts have been tendered by State Farm.
As previously indicated, payments made by the excess insurer, Prudential, cannot be attributed to State Farm's obligation to compensate Mr. Guitreau for his damages. In some instances the presence of a res nova question of law, the resolution of which forms the basis of the insurer's denial of a claim, may be a militating factor against the finding of arbitary and capricious failure to pay. See Rudloff v. Louisiana Health Services and Indemnity Co., 385 So.2d 767 (La.1980); Breland v. Louisiana Hospital Services, Inc., 468 So. 2d 1215 (La.App. 1st Cir.1984). However, where sufficient jurisprudence exists to give guidance to insurance companies in determining whether a claim should be denied, the risk of erroneous interpretation falls on the insurer. Evans v. First of Georgia Ins. Co., 479 So.2d 568 (La.App. 1st Cir.1985); Reichert v. Continental Ins. Co., 290 So.2d 730 (La.App. 1st Cir.) writ denied, 294 So.2d 545 (La.1974). We find the jurisprudence sufficiently clear in its guidance to conclude that the jury was not manifestly erroneous in awarding the statutory penalties and attorney fees.

PROFFERED TESTIMONY
State Farm claims in its last assignment of error that the trial court erred in refusing to allow the testimony of a local attorney as to whether State Farm's refusal to tender payment was reasonable. The proffered testimony was offered to show that the advice of legal counsel to State Farm, that State Farm was entitled to the credits previously discussed, was sound based on the jurisprudence. Since the proffered testimony encroached upon the province of the trial judge to give the jury instructions by expounding upon the law to be applied to the resolution of the issue, it was also properly excluded.

COSTS
In response to the present appeal, Mr. Guitreau filed an answer seeking to have the judgment amended to reflect an expert witness fee taxed as costs for Dr. Connie Bryant, which was inadvertently not taxed in the proceedings below. It is evident from the record that the failure to fix this expert witness fee was merely an oversight; therefore, it is hereby fixed at $250.00 and taxed as costs. See Caris v. Reeves, 207 So.2d 793 (La.App. 4th Cir. 1968).
Also, Mr. Guitreau requests an additional attorney fee for the cost of defending this appeal. Mr. Guitreau is entitled to such an award and it is hereby fixed at $1,000.00. See Sibley v. Insured Lloyds, 442 So.2d 627 (La.App. 1st Cir.1983). Legal interest on this $1,000.00 fee is awarded from the date of this decision. See Nelson v. Allstate Ins. Co., 464 So.2d 1015 (La.App. 1st Cir.1985).
For the foregoing reasons the judgment of the trial court is affirmed as amended. All costs of this appeal are to be borne by the defendant, State Farm.
AFFIRMED AS AMENDED.
NOTES
[1] Suit was originally filed against not only State Farm but also: American Hardware Mutual, the uninsured motorist carrier on the vehicle in which Mr. Guitreau was a passenger on April 20, 1984; and, Prudential Property and Casualty Ins. Co. (referred to herein as "Prudential"), the uninsured motorist carrier of Brent Guitreau's parents. Coverage under the Prudential policy extended to Brent Guitreau under the policy provision as he was a relative residing with the insureds at the time of the accident. Suit was brought against all defendants for the injuries Mr. Guitreau suffered from the combined effects of the April 8, 1984 and the April 20, 1984 accidents as well as for the damages sustained from each accident separately, against the respective insurers. Mr. Guitreau settled with American Hardware Mutual on October 10, 1985; thereafter this insurer was dismissed from the lawsuit. Mr. Guitreau settled with Prudential on August 4, 1984 and received $5,000.00 for the injuries he sustained in each accident (a total of $10,000.00); thereafter, Prudential was dismissed from the lawsuit. The matter proceeded to trial on the 28th and 29th of April, 1987 against State Farm alone and solely for the damages plaintiff sustained on April 8, 1984.
[2] The lawsuit was amended on January 28, 1987 to include as party plaintiffs Brent Guitreau's parents, Gerald Guitreau and Shirley Johnson (Brent's mother who had remarried subsequent to the accident). Brent's parents sought reimbursement of medical expenses they paid on his behalf during his minority. Consequently, judgment was rendered in favor of Brent Guitreau, Gerald Guitreau, and Shirley Johnson.