SAVOIE, Judge.
This case involves the issue of whether a state employee (plaintiff) who resigns from her employment with the state, whereupon her family medical coverage with State Employees Group Benefits Program (State Group) terminates, and who then returns to state employment and again enrolls for family medical coverage with State Group, is entitled, under the New Enrollment/Previous Contract provision of the Plan Document of Benefits, to the same benefits she had received prior to her termination.[1]
The New Enrollment/Previous Contract provision, under which plaintiff falls, reads as follows:
ARTICLE 1 GENERAL PROVISIONS
II. EMPLOYEES TO BE COVERED
A. Employee Coverage
5.New Enrollment/Previous Contract The coverage of a terminated Employee of a Participant Employer who is reemployed by the same or another Participant Employer within 12 months of the effective date of termination shall be considered a New Enrollment/Previous Contract application. (In order to be considered under these provisions, the Employee must have been covered or have been eligible for coverage under the Program at the effective date of termination.) As a New Enrollment/Previous Contract applicant, the Employee will be eligible for only that coverage in force at termination.
*1276 In the event that an additional Dependent was acquired during the period of termination, that Dependent may be covered provided he is added within 30 days of reemployment.
The Dependent will be subject to any Pre-existing Condition limitations as defined in Article 1, Section 11(E) which may be imposed on the covered Employee.
A New Enrollment/Previous Contract applicant who was enrolled with supplemental life insurance at the effective date of termination will be reinstated at an amount based upon the Employee’s salary at the time of reemployment. A New Enrollment/Previous Contract applicant who was not enrolled for life insurance at the effective date of termination will be eligible for life insurance only through Evidence of Insurability acceptable to the life insurance carrier.
Prior to her termination, the plaintiff received benefits for in-home nursing care for her son under the following provision:
ARTICLE 3 MEDICAL BENEFITS
I. COMPREHENSIVE MEDICAL BENEFITS
G. Eligible Expenses
14. Services of a registered nurse (R.N.) and of a licensed practical nurse (L.P.N.) duly licensed under the laws of the state where the services were rendered, when Medically Necessary and prescribed by a licensed medical doctor, provided the nurse(s) are'not related to the Covered Person by blood, marriage, or adoption.
Effective July 1, 1985, while the plaintiff was not working for the state, the provision was amended to read:
14. Services of a registered nurse (R.N.) and of a licensed practical nurse (L.P.N.) duly licensed under the laws of the state where the services were rendered, when Medically Necessary and prescribed by a licensed medical doctor, provided the nurse(s) are not related to the Covered Person by blood, marriage, or adoption, and provided the services are rendered in a Hospital, as defined in Article 1, Section I(R). Services of an R.N. or L.P.N. which are being provided to a Covered Person on July 1, 1985 in a non-Hospital treatment setting shall constitute an eligible expense until no longer certified as Medically Necessary by the attending medical doctor.
The plaintiff submitted claims for in-home nursing care rendered after she had reenrolled with State Group; these claims were denied.[2] The plaintiff unsuccessfully pursued administrative remedies, and then appealed to the district court for review of those proceedings; the plaintiff also sought penalties and attorney’s fees under LSA-R.S. 22:657. The trial court ruled in favor of the plaintiff, finding that she was entitled to the insurance benefits for which she would have been eligible under the policy in force at the time of her resignation on October 26, 1984, including benefits for in-home nursing care.
From this judgment, State Group appeals urging the following assignments of error: 1) the trial court erred in failing to interpret the New Enrollment/Previous Contract provision of the State Group Benefits Program Plan Document in accordance with rules of contract interpretation set forth in the Civil Code and jurisprudence and 2) the trial court erred in finding that the New Enrollment/Previous Contract provision contained an ambiguity which should be construed against State Group. The plaintiff answered the appeal, urging that the trial court erred in failing to award penalties and attorney’s fees under LSA-R.S. 22:657.
*1277 State Group contends that the word “coverage” in the sentence “[a]s a New Enrollment/Previous Contract applicant, the Employee will be eligible for only that coverage in force at termination”, refers to those persons for whom benefits are provided. The plaintiffs contend that the word “coverage” refers to the benefits or expenses covered.
In written reasons for judgment, the trial judge agreed with the plaintiffs contention, finding that “the word ‘coverage’ is used throughout [the policy] to describe persons who are protected by the policy and benefits or liabilities owed an insured through application of the policy.” The trial judge cited several provisions in the policy where the words “covered” and “coverage” were used. The trial judge then stated that in both professional and lay terminology “coverage” meant not only persons covered but also the risks or liabilities protected through the policy. The judge then found that the sentence containing the word “coverage” was ambiguous, reasoning:
An ordinary person could understand the words of this policy to mean that the insureds would receive the same benefits on reenrollment as they had at the time of termination of the original contract because of the use of the word ‘coverage’ throughout the policy, and because of the normal, everyday usage of the word.
We agree with the trial judge’s finding that this particular sentence of the policy is ambiguous. We have examined the policy in its entirety and find that the word “coverage” is used to refer to types or classes of coverage (i.e., employee or dependent), benefits, and particular kinds of coverage (catastrophic illness endorsement, health, and life). While the word “coverage” is not defined in the policy, the phrases “Employee Coverage” and “Dependent Coverage” are defined as follows:
ARTICLE 1 GENERAL PROVISIONS
I. DEFINITIONS
L. The term Employee Coverage as used herein shall mean benefits provided hereunder with respect to the Employee only.
M. The term Dependent Coverage as used herein shall mean benefits provided hereunder with respect to the Employee’s Dependents only.
“Coverage” is used in its broadest sense under ARTICLE 1 GENERAL PROVISIONS, III. CONTINUED COVERAGE; for example, under A. Leave of Absence, the policy reads as follows:
If an Employee is allowed an approved leave of absence by his employer, he may retain his coverage for a period up to but not to exceed one year, provided the full premium is paid. Failure to do so shall result in cancellation of coverage.
We also note that when the policy deals with types of coverage, which would include persons covered, it refers to this as “class of coverage”; for example, ARTICLE I GENERAL PROVISIONS, IV. CHANGE OF CLASSIFICATION, A. Change in Coverage, reads in pertinent part as follows: “When, by reason of a change in family status (i.e., marriage, birth of child), the class of coverage is subject to change.... ” Under ARTICLE 3 MEDICAL BENEFITS, I. COMPREHENSIVE MEDICAL BENEFITS, H. Coverage After Termination of Comprehensive Medical Benefits, dealing with coverage after termination of comprehensive medical benefits, the policy states, “If coverage with respect to a Covered Person terminates while he is confined in a Hospital as an in-patient, and if confinement began pri- or to the effective date of the termination, the Program will continue to pay benefits provided under this Article 3, Section 1, Comprehensive Medical Benefits.... ” The word “coverage” refers to a kind of coverage in this provision which appears under ARTICLE 3 MEDICAL BENEFITS, III. SUPPLEMENTAL EMERGENCY ACCIDENT BENEFITS:
A. When non-occupational Accidental Bodily Injury requires the Covered Person to receive Treatment and incur an eligible expense within 72 hours of an *1278 accident, and services or Treatment as a result of such Accidental Bodily Injury are furnished by or at the direction of a Physician while this coverage is in force as to such person, the Program will pay the Reasonable Expense actually incurred, except as set forth below, and not to exceed the maximum amount payable as specified in the Schedule of Benefits for any one Accidental Bodily Injury-
Finally, under ARTICLE 4 UNIFORM PROVISIONS III. CLAIM FORMS, the policy states as follows:
The Program shall furnish all Participant Employers with claim forms. A PROPERLY COMPLETED CLAIM FORM, SIGNED BY THE PLAN MEMBER, IS REQUIRED TO BE SUBMITTED WITH EVERY CLAIM. If the Program receives a bill without a completed claim form, the Program has the right to require additional documentation in order to determine the extent of coverage, if any, under this Plan.
We also note that the word “covered” refers to benefits payable as well as to persons covered. For example, under ARTICLE 3 MEDICAL BENEFITS, I. COMPREHENSIVE MEDICAL BENEFITS B. 1., dealing with the deductible, the policy states: “If a Covered Person incurs covered medical expenses during the last three months_” Under E. Maximum Benefit, the policy reads, “Benefits under this Article 3, Section 1, Comprehensive Medical Benefits, for covered medical expenses incurred by any one Covered Person during such person’s lifetime shall not exceed the maximum amount as specified in the Schedule of Benefits.” As can be seen from this examination of the policy, the word “coverage” is used to refer to both benefits payable and persons covered.
State Group contends that the placement of the New Enrollment/Previous Contract provision in the policy under “EMPLOYEES TO BE COVERED” shows that “coverage” means persons covered. We disagree. The word “coverage” is used under this section in other provisions, and it has different meanings in these provisions within the same section. Thus, we do not believe that its placement under the section “EMPLOYEES TO BE COVERED” removes the ambiguity.
State Group also contends that the paragraph following the sentence at issue removes the ambiguity. According to State Group, the New Enrollment/Previous Contract provision is designed to prevent an employee from circumventing the pre-exist-ing condition limitation in ARTICLE 1 GENERAL PROVISIONS, II. EMPLOYEES TO BE COVERED, E. Pre-Existing Condition. If an employee fails to enroll for coverage within thirty days of employment or within thirty days of acquiring a new dependent, he is subject to the pre-ex-isting condition limitation. State Group in brief presents the hypothesis where an employee fails to enroll for coverage in the required time, then resigns or is dismissed from employment only to be reemployed shortly thereafter, at which time he could enroll for coverage within the first thirty days without being subjected to the pre-ex-isting condition limitation. We disagree with State Group’s contention that the paragraph makes this intent clear. Furthermore, the interpretation of “coverage” to mean both persons covered and benefits payable does not defeat the intent of State Group.
For these reasons, we agree with the trial court’s finding that the policy’s use of the word “coverage” is ambiguous. When language in an insurance policy is subject to more than one accepted contention or meaning, the language is ambiguous and should be interpreted in favor of the insured to provide coverage. Massey v. Board of Trustees, State Employees Group Benefits Program, 500 So.2d 864 (La.App. 1st Cir.1986), writ denied, 501 So.2d 775 (La.1987). See also Breland v. Schilling, 550 So.2d 609, 610-611 (La.1989). An ambiguity in an insurance policy is also resolved “by ascertaining how a reasonable insurance policy purchaser would construe *1279 the clause at the time the insurance contract was entered.” Breland, 550 So.2d at 610-611. (Footnote omitted). We note, as did the trial court, that the word “coverage” is used in both professional and lay terminology to refer to both benefits payable and persons insured.[3] Thus, we construe the word “coverage” under the New Enrollment/Previous Contract provision to mean both persons covered and benefits payable, which is the interpretation which provides coverage to the plaintiff. As to the plaintiff, “coverage in force at termination” included benefits for in-home nursing care; therefore we find that the trial court was correct in awarding the plaintiff the benefits for her son’s in-home nursing care. State Group’s assignments of error have no merit.
We must now determine whether the plaintiff is entitled to penalties and attorney’s fees under LSA-R.S. 22:657. Penalties and attorney’s fees are to be awarded where the insurer withholds payment of the claim more than thirty days without reasonable grounds, “such as would put a reasonable and prudent business man on his guard.” LSA-R.S. 22:657; Lapeyrouse v. Pilot Life Insurance Co., 369 So.2d 1128, 1132 (La.App. 1st Cir.1979). LSA-R.S. 22:657 is a penal statute and must be strictly construed. Its sanctions may not be imposed unless the refusal to pay is clearly arbitrary and capricious. Posey v. Board of Trustees, State Employees Group Benefits Program, 426 So.2d 705 (La.App. 1st Cir.1982), writ denied, 429 So.2d 139 (La.1983). (Citations omitted).
In some instances the presence of a res nova question of law, the resolution of which forms the basis of the insurer’s denial of a claim, may be a militating factor against the finding of an arbitrary and capricious failure to pay. Guitreau v. State Farm Mutual Automobile Insurance Co., 540 So.2d 1097, 1102 (La.App. 1st Cir. 1989). “[W]here sufficient jurisprudence exists to give guidance to insurance companies in determining whether a claim should be denied, the risk of erroneous interpretation falls on the insurer.” Gui-treau, 540 So.2d at 1102. (Citations omitted). The issue before us appears to be res nova. Furthermore, while we ultimately rejected the contentions of State Group, these contentions formed a reasonable basis upon which State Group could withhold payment without being exposed to a penalty for arbitrariness. See Soniat v. Travelers Insurance Co., 538 So.2d 210, 216 (La.1989). We find the plaintiff’s assignment of error to be without merit. For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be assessed against State Group.
AFFIRMED.

. The plaintiffs are Connie T. Wyvill and her husband Ridgely Wyvill, individually and as administrators of the estate of their son,’ Ridgely Tyler Wyvill. Connie Wyvill began her state employment at East Louisiana State Hospital in October, 1972; she initially enrolled with State Group for family medical coverage. Mr. and Mrs. Wyvill’s son, Ridgely Tyler Wyvill, was born on July 27, 1978, and on August 3, 1978, he was added to Mrs. Wyvill’s policy as a covered dependent. On November 22, 1982, Mrs. Wyvill transferred to the Office of Elderly Affairs, and continued her family medical coverage. She resigned from her employment with the Office of Elderly Affairs on October 26, 1984, and her family medical coverage with State Group terminated on November 1, 1984. On September 30, 1985, Mrs. Wyvill returned to state employment with the Feliciana Forensic Facility and again enrolled in State Group for family medical coverage, which became effective on November 1, 1985.

. The claims which were denied by State Group are for in-home private duty nursing services rendered between March 14, 1987 and November 28, 1987; they total $132,296.13. We note that in his judgment, the trial judge awarded the plaintiffs $131,796.13 with interest from date of judicial demand.
Mr. and Mrs. Wyvill’s son suffers from nesi-dioblastosis of the pancreas, diabetes, seizure disorder, strabismus, and severe mental retardation. It is not disputed that the plaintiffs’ son’s care is medically necessary.

. "Coverage" is defined in Black’s Law Dictionary 330 (5th Ed.1979) as follows: "In insurance, amount and extent of risk covered by insurer."
"Coverage” is defined in Webster’s Third New International Dictionary 524-525 (3rd. ed. 1966) as follows:
"the act or fact of including or treating: a thing that covers: COVER: as a. INSURANCE: protection by insurance policy: inclusion within the scope of a protective or beneficial plan.”